IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
AT ALBUQUERQUE

JAN 24 1986

JESSE CASAUS
CLERK

STATE OF NEW MEXICO ex rel. )
S.E. REYNOLDS, State Engineer, )
                               )
            Plaintiff,         )
                               )
     v.                        )     No. 6639-M Civil
                               )
R. LEE AAMODT, et al.,         )
                               )
            Defendants.        )

ENTERED ON DOCKET
Jan 24, 1986

### MEMORANDUM OPINION AND ORDER

This matter came on for consideration on the Special Master's October 9, 1984 Report on the water right claims of the United States. Having considered the State of New Mexico's objections to the report filed October 30, 1984, the **inter se** objections filed by certain defendants on December 27, 1984, the briefs of counsel and the arguments raised at the March 8, 1985 hearing, I adopt the Special Master's Report insofar as it approves water rights enumerated in Section I of the September 26, 1984 Stipulation between the State of New Mexico and the United States (Stipulation), but I reject the Special Master's approval of water rights in Section II of the Stipulation. **Fed.R.Civ.P. 53(e)(2).**

The United States in its proprietary capacity claims water rights in the Pojoaque Basin for the U. S. Forest Service only, and not for any other United States agencies. Section I of the Stipulation approves a state right to underground water from a well at the Black Canyon Campground with a priority date of 1937. This water right is valid without a state permit because the Rio Grande Underground Water Basin was not extended to the Santa Fe National Forest lands until June 8, 1967. The other two rights enumerated in Section I are federal reserved rights with a priority date of January 28, 1909, the date of the reservation of public domain for the Santa Fe National Forest. **See Presidential Proclamation No. 835, January 28, 1909.** The use of water for domestic use by Forest Service personnel at the Aspen Cabin site and for forest fire fighting and timber road construction come within the primary purposes for which the National Forests were established and are valid reserved rights under the **Winters** Doctrine. See **Winters v. United States**, 207 U.S. 564 (1908); **U.S. v. New Mexico**, 438 U.S. 696 (1978). The amount of water for forest fire fighting and timber road construction need not be quantified at this time.

The water rights in dispute in Section II of the Stipulation are for recreational uses at the Santa Fe Ski Basin. The United States claims a right to divert a total of 24.37 acre-feet per year from two springs and two alluvial sumps in the stream bed of the Rio en Medio, with a total consumptive use of 2.38 acre-feet per year. The parties agree that this is surface water, not underground water.

The water is now used for snow making and for domestic use at the two ski lodges. The United States advances two theories in support of these claims, a federal appropriative right and a federal reserved right. Both theories were briefed to the Special Master, but the United States claims that the Special Master did not consider the federal reserved right theory. In any case, the Special Master approved the disputed water rights on a federal appropriative right theory, and I now deny these claims based on either theory.

### I.  Appropriative Rights

The United States first claims that these rights are valid as federal appropriative rights. It appears to define a federal appropriative right as a right claimed by a federal agency which complies with state substantive water law but not state procedural water law. It claims that because it appropriated water as of a certain date and put it to beneficial use (the only two substantive requirements of state water law) it has a valid water right without complying with the state procedures of (1) application for a permit to appropriate, (2) published notice, (3) a hearing to show non-impairment of existing water rights, and (4) a permit granted by the State Engineer. The State argues that all of these procedures exist to prevent impairment of existing rights, and that non-impairment is part of New Mexico's substantive water law. I do not decide whether these requirements are part of state substantive or procedural law because I hold that a federal agency must comply with both state substantive and procedural law when it seeks an appropriative right.

In **United States v. New Mexico**, supra, the Supreme Court held that aside from water reserved for the primary purposes of the national forests the United States must "acquire water in the same manner as any other public or private appropriator." **Id.** **at 702.** In New Mexico, a public or private appropriator of surface water must comply with the statutory procedures of application, notice, hearing and the grant of a permit. **N.M.Stat.Ann. §72-5-1 et seq. (1985 repl. pamph.).** These requirements have been in effect since the Water Code was adopted in 1907. The United States first applied for permits from the State Engineer for water rights at the Ski Basin on September 17, 1984. These applications were returned to the United States for correction of deficiencies and were re-submitted on February 21, 1985. These applications can now be acted on by the State Engineer in proceedings in which the United States is treated like any other public or private appropriator.

The United States claims that it should be granted the benefit of the Doctrine of Relation Back and be granted priority dates of 1948, 1965, 1977 and 1984, the dates of first use from its four sources, instead of the date of application for permit. First, the Doctrine of Relation Back appears to apply only to ground water. The two cases cited by the United States, **State, ex rel. Reynolds v. Mendenhall**, 68 N.M. 167 (1981) and **State v. Lewis**, Chavez County Nos. 20294 and 22600 (consol.) (State's application for orders to show cause, Feb. 20, 1985, at 2, ¶4) apply the Doctrine of Relation Back only to ground water. The disputed rights here are to surface water. Second, the doctrine is applied to allow a priority date as

-4-

of the date of first use if the use began before an underground basin was declared and applications and permits were required. If applied to surface water, the doctrine would only apply to uses that began before 1907, the date applications for surface water were first required. The uses in the Ski Basin began in 1948. Third, these arguments must be presented to the State Engineer in the first instance. Until now, the United States has negotiated with the State Engineer from a position of not being required to comply with state procedural law. The United States must negotiate from the position of any other public or private appropriator. It must accept the State Engineer's interpretation of state water law unless it has a valid reason for objecting to the State Engineer's Offer of Judgment on equal protection or some other grounds.

The United States has proposed the existence of a federal appropriative right to other courts, but it has never been upheld. In **U.S. v. City & County of Denver**, 656 P.2d 1 (Colo. 1982), the Colorado Supreme Court allowed the United States to present evidence to the Colorado Water Court on remand on the date of first use by filing "proper applications which will give notice to potential objectors," **Id.** at 35, in support of its appropriative claims. That was in conformity with Colorado water law. New Mexico law requires application, notice, hearing and grant of a permit, with the priority date set as of the date of application. **City & County of Denver** does not support the notion of a federal appropriative right that can ignore state procedural law.

I conclude that there is no such thing as a federal appropriative right. Repeated proposal of the theory does not make it a fact. There is a federal reserved right and a state appropriative right, but no hybrid of the two.

This conclusion is bolstered by the policies of the United States' two major land management agencies. The Department of the Interior, after taking the position for several years that it could assert federal non-reserved water rights that need not comply with state law, **86 Interior Dec. 553 (1979) (Opinion of Interior Solicitor Krulitz)** has returned to its previous position of only asserting appropriative water rights that comply with state substantive and procedural law. **88 Interior Dec. 1055 (1981); 90 Interior Dec. 81 (1983) (Opinion of Interior Solicitor Coldiron).** In his 1981 Opinion, Solicitor Coldiron noted a presumption that "the United States and its agencies must acquire water rights in accordance with state substantive and procedural law unless necessary for the original purpose of a reservation." **88 Interior Dec. at 1064.** He concluded that "[f]ederal entities . . . may not, without congressionally created reserved rights, circumvent state substantive or procedural laws in appropriating water." **Id. at 1064-65.**

The U. S. Forest Service's adherence to state substantive and procedural law throughout its history is well documented by the Supreme Court in **U.S. v. New Mexico, supra** at 703 n.7. After considering the federal non-reserved water right theory between 1979

and 1981, the Department of Agriculture reaffirmed that it would "rely on state law to obtain needed water rights except where Congress has specifically established a water right or where a reserved right exists," thereby bringing U.S.D.A.'s position "in harmony with the policy recently adopted by the Department of the Interior." **Letter from John B. Crowell, Jr., Assistant Secretary for Natural Resources, Department of Agriculture, to D. Craig Bell, Executive Director, Western States Water Council, Feb. 15, 1982.**

Without discussing the similarities or differences between a federal non-reserved right and a federal appropriative right, I simply find the declared policies of these two federal agencies illuminating on the question of the United States' claimed federal appropriative right.

## II.  Federal Reserved Right

The United States also claims a federal reserved right with a 1960 priority date for its water uses in the Santa Fe Ski Basin. Its theory is that the Multiple-Use Sustained-Yield Act of June 12, 1960, **74 Stat. 215, 16 U.S.C. § 528-33 (1960 Act),** expanded the purposes of existing national forests and thereby expanded their reserved water rights as of that date.

In **U.S. v. New Mexico, supra,** the Supreme Court held that the implied reservation of water doctrine must be narrowly construed so as to apply only to the primary purposes for which the land was

reserved, in acknowledgment of Congress' long-held deference to state water law in the West. The Court, in construing the Organic Administration Act of June 4, 1897, **30 Stat. 34, 16 U.S.C. § 473 et seq. (1897 Act),** determined that the purposes for which the national forests were established, are twofold: (1) to preserve the timber, and (2) to secure favorable conditions of water flow. **Id. at 718.** The uses of the water in the Santa Fe Ski Basin are construed by all parties to be recreational uses, and are therefore clearly excluded from the original purposes of the Santa Fe National Forest as established in 1909 under the 1897 Act.

The United States argues that the 1960 Act added new purposes to the existing national forests, and as such was a new reservation accompanied by new implied water rights. The Act provides:

> It is the policy of Congress that the national forests are established and shall be administered for outdoor recreation, range, timber, watershed, and wildlife and fish purposes. The purposes of §§ 528 to 531 of this title are declared to be supplemental to, but not in derogation of, the purposes for which the national forests were established as set forth in the [Organic Administration Act of 1897.]

**Id. at 713.** The Court stated:

> While we conclude that the Multiple-Use Sustained-Yield Act of 1960 was intended to broaden the purposes for which national forests had previously been administered, we agree that Congress did not intend to thereby expand the reserved rights of the United States.

**Id.** In so doing, the Court took what Congress declared to be supplemental purposes and essentially categorized them as secondary purposes with respect to implied water rights.

The United States argues that the Court's statement is dictum and should not be binding precedent on the question now before me. Footnote 21, **Id.** at 713, indicates that the Court's holding is indeed broader than the issue presented to it for decision. In **New Mexico**, the United States had only argued that the 1960 Act stated purposes that had existed since 1897 and that it reserved additional water rights with a priority date of 1897. It did not argue for new purposes which implied new water rights with a 1960 priority.

The question is what weight to give the clearly articulated dictum of five Supreme Court Justices in 1978. Justice Stewart, who sided with the majority, has since been replaced by Justice O'Connor. Without attempting to predict how Justice O'Connor would rule on this issue, or whether any other Justices have changed their views, I simply conclude that since the majority was fully aware of the breadth of its holding, **see** **Powell, J. dissenting Op'n**, **id.** at 718 n.1, it intentionally sought to reach out and answer the question now before me and I am bound by its opinion. The 1960 Act did not expand the reserved water rights of the United States to give new water rights for recreational purposes with a 1960 priority in existing national forests.

The United States District Court for the District of Oregon and the Colorado Supreme Court have considered this identical question. **U.S. v. Adair**, 478 F.Supp. 336, 347-48 (D.Ore. 1979), **aff'd** and **modified** 723 F.2d 1394 (9th Cir. 1984) (no mention of the effect of the 1960 Act); **U.S. v. City & County of Denver**, **supra** at 24-27. Both courts followed the guidance of the Supreme Court in **New Mexico** and

held that the 1960 Act did not expand the reserved water rights of existing national forests.

By contrast, a federal district court has held that the Wilderness Act of 1964, **78 Stat. 890, 16 U.S.C. § 1131-36,** did impliedly reserve additional water rights for specified new purposes when Congress withdrew wilderness areas from previously reserved national forest lands. <u>Sierra Club v. Block</u>, **No. 84-K-2 (D.Colo. Nov. 25, 1985);** <u>see</u> **54 U.S.L.W. 2312-13 (Dec. 17, 1985).**

### III. Conclusion

The United States has valid water rights as enumerated below at the Black Canyon Campground, the Aspen Cabin site and an unquantified right throughout the Santa Fe National Forest within the Rio Pojoaque Basin for forest fire fighting and timber road construction. It has no water rights in the Santa Fe Ski Basin, and it must comply with state procedures in order to obtain any. Now, Therefore,

**IT IS ORDERED** that the United States is adjudicated the following water rights within the Rio Pojoaque stream system, excluding all water right claims on behalf of the Pueblos of Nambe, Pojoaque, San Ildefonso, and Tesuque:

   1.  Department of Agriculture: United States Forest Service
      
      (a) Purpose: Domestic use for public recreation.
      
      State Engineer File No.: RG-37302
      
      Priority: 1937
      
      Point of Diversion: A well located in the SW¼SW¼SW¼, Section 1, Township 17 North, Range 10 East, N.M.P.M.

      Location of Use:  The Black Canyon Campground in the SW¼SW¼, Section 1, Township 17 North, Range 10 East, N.M.P.M.

      Amount of Use:  Not to exceed 3.00 acre-feet per annum diverted at the well.

(b)  Purpose:  Domestic use by Forest Service personnel.

      State Engineer File No.:  None (Forest Service No. 015)

      Priority:  January 28, 1909

      Point of Diversion:  The Chupadero Irrigation Company trans-basin ditch diverts from the Rio en Medio at a point within the NE¼SE¼SE¼, Section 12, Township 18 North, Range 10 East, N.M.P.M., as described in Declaration No. 01929 filed in the State Engineer Office.

      Location of Use:  The Aspen Cabin site located in SW¼ of Section 12, Township 18 North, Range 10 East, N.M.P.M.

      Amount of Water:  Not to exceed 0.11 acre-foot per annum taken from the Chupadero Irrigation Company Ditch at the Aspen Cabin site, as a reserved right based upon the Organic Administration Act of June 4, 1897, 16 U.S.C. § 475, and Presidential Proclamation No. 835 dated January 28, 1909.

(c)  Purposes:  Forest fire fighting and timber road construction.

      State Engineer File No.:  None.

      Priority:  January 28, 1909

-12-

   Location of Use: The Santa Fe National Forest within the drainage of the Rio Pojoaque stream system. Amount of Water: Reserved for quantification at a later date, if required for administration of water rights under the final decree of this court.

2. United States Department of the Interior, Bureau of Reclamation, Pojoaque Tributary Irrigation Unit of the San Juan-Chama Project: No water rights claimed by the United States.

3. Other United States departments or agencies: No water rights.

_____
SENIOR UNITED STATES DISTRICT JUDGE