IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.*
State Engineer,
    Plaintiff,
     v.                                                  66cv06639 M

R. LEE AAMODT, *et al.,*                 RIO POJOAQUE ADJUDICATION
    Defendants,
    and
UNITED STATES OF AMERICA,
PUEBLO DE NAMBE,
PUEBLO DE POJOAQUE,
PUEBLO DE SAN ILDEFONSO,
and PUEBLO DE TESUQUE,
        Plaintiffs-in-Intervention.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is a part of the general adjudication of all water rights in the Rio Pojoaque stream system and concerns quantification of certain irrigation water rights of the Pueblos of Nambe, Pojoaque, San Ildefonso and Tesuque ("Pueblos"). On July 20, 1993, the Special Master filed findings of fact and conclusions of law ("Report") (Docket No. 4197) recommending for each Pueblo water right awards arising out of the June 7, 1924 Pueblo Lands Act, 43 Stat. 636 ("1924 Act") and the May 31, 1933 Pueblo Compensation Act, 48 Stat. 108 ("1933 Act"). After filing their motions for action and objections to the Report, the parties presented oral argument on April 19, 1994. Thereafter, they had an opportunity to supplement the record

and to respond to the Court's April 21, 1994 letter. Pursuant to my request, on March 4, 1999 the parties filed a Joint Report to the Court (5496) summarizing their objections to the Special Master's Report.

Having considered the motions and counsels' arguments, having made a *de novo* review of pertinent parts of the record and the law, and being otherwise fully advised in the premises, I FIND and CONCLUDE pursuant to Fed.R.Civ.P. 53(e)(2) that a) the parties' motions and cross motions for action or adoption of the Report (4241, 4245, 4246) should be and shall be GRANTED in so far as they request action; b) the Bureau of Indian Affairs' ("BIA") records upon which the Pueblos must rely for evidence in the replacement segment are largely inadequate for these purposes; c) the Pueblos cannot obtain a fair adjudication of their water rights if forced to rely solely upon the replacement rights approach set forth in earlier Opinions; d) certain portions of my prior Opinions should be and shall be EXPANDED AND AMENDED; e) the Special Master's findings of fact should be and shall be SET ASIDE; f) a modified rule of law regarding the Pueblos' reacquired, acquired and replacement water rights should be and shall be ADOPTED; and g) the matter should be and shall be RECOMMITTED to the Special Master for modification and additional findings and recommendations based upon the direction set forth below.

1.  **PROCEDURAL MATTERS**

    Law of The Case: Under the law of the case doctrine, when a court declares a rule of law in a segment of a case, "...'that decision should continue to govern the same issues in subsequent stages of in the same case'. This rule of practice promotes finality and efficiency of the judicial process by 'protecting against the agitation of settled issues'." Christianson v. Colt Indus. Operation Corp., 486 U.S. 800, 816 (1988) (quoting Arizona v. California, 460 U.S. 605, 618 (1983); J. Moore, J. Lucas, & T. Currier, *Moore's Federal Practice* ¶ 0.404[1], p. 118 (1984).) The doctrine does not apply in this instance because the rule of law introduced below encompasses a range of water rights which include the replacement rights and amends few of the replacement right principles. No settled issues will be 'agitated' by this change because nothing in this segment has been resolved. I am still considering reacquired, newly acquired and replacement water rights in the first instance. Judicial finality is not affected by this action and judicial efficiency will be enhanced, if not in this case, in others involving the determination of Pueblo water rights.

    Even if the doctrine did apply, it is a discretionary rule of practice when a judge applies it to his/her prior decisions in a case. United States v. Monsisvais, 946 F.2d 114, 116 (10th Cir. (N.M.), 1991) ("Monsisvais") (citing Messinger v. Anderson,

225 U.S. 436, 444 (1912).) Many rulings are reconsidered after a tentative decision is tested by argument or additional briefing. Vol. 18 *Moore's* §134.21(Matthew Bender 3rd Ed.). Having reviewed the evidence, I have determined that in the first half of this century, the BIA failed to anticipate the evidentiary needs of this case and does not have the records necessary to determine Pueblo replacement water rights. Applying the replacement rights method described in prior Opinions as a primary method is cumbersome, improperly limits, and does not provide an adequate adjudication of the Pueblos' water rights. I should and shall MODIFY replacement water rights law to avoid manifest injustice to the Pueblos in connection with their water rights adjudication. Fed.R.Civ.Proc. 53(e)(2); Monsisvais, 946 F.2d at 116.

Additional Evidence: The Pueblos and the United States request that I direct the Special Master to receive further evidence through Nambe Pueblo's expert witness regarding replacement works acreage irrigated under the Highline Ditch. I considered and denied this request in the October 1, 1991 Memorandum Opinion and Order (3865). Nothing has occurred since then to persuade me to reconsider this ruling. This request should be and shall be DENIED, unless the Pueblo shows that additional evidence is necessary to meet the requirements set forth below.

Other Procedural Objections and Motions: Since I have changed the rule of law applied to this segment, it is unnecessary to consider and rule upon the parties' other procedural objections.

**2. DISCUSSION**

By 1924, non-Pueblos had settled within the exterior boundaries of the Pueblo grant lands creating considerable confusion regarding land titles. 1924 Act; New Mexico v. Aamodt, 537 F.2d 1102, 1105, 1109 (1976); New Mexico v. Aamodt, 618 F.Supp. 993, 1004-5) (1985) ("Aamodt II"). Congress passed the 1924 Act to finally settle the Pueblos' land titles. §1, 1924 Act; Mountain States Tel. & Tel. v. Pueblo of Santa Ana, 472 U.S. 237, 240, 244 (1985); Aamodt II, 618 F.Supp. at 1004. Subsequently, it passed the 1933 Act, in pertinent part, to supplement 1924 Act funds available for a) compensating the Pueblo losses, b) acquiring lands and water rights, and c) developing irrigation works and other permanent improvements. §1, 1933 Act; Aamodt II, 618 F.Supp. at 1005.

The 1924 Act addresses title to lands within the exterior boundaries of the Pueblo grant lands and related water rights. Its' express purpose is to quiet title to lands claimed for the Pueblos Indians of New Mexico. §§1, 3, 1924 Act. It also, among other things, a) extinguishes all Pueblo title, including aboriginal title, to lands quieted in non-Pueblos, b) terminates Pueblos' water right which existed on

5

these lands, c) recognizes non-Pueblos' vested state law water rights on the lands adjudicated to them, d) permits Pueblos to recover water rights through reacquiring lost lands, acquiring lands to replace lost lands, and developing water works and other permanent improvements, and e) expressly protects all other Pueblo rights. *Id.* at §§1, 6, 13; §9, 1933 Act; <u>Aamodt II</u>, 618 F.Supp. at 1010. It does not address aboriginal title to water rights.

Only Congress can extinguish aboriginal title. <u>Johnson v. M'Intosh</u>, 21 U.S. 543, 8 Wheaton 543 (1823); <u>Aamodt II</u>, 618 F.Supp. at 1007-8, 1010. Congress need not expressly extinguish this title, but its intent must be 'plain and unambiguous'. <u>Aamodt II</u>, 618 F.Supp. at 1008, (quoting <u>United States v. Santa Fe Pac. Rail. Co.</u>, 314 U.S. 339, 345-6 (1941).) Federal policy to respect Indian title requires that the intent to extinguish Indian title is not 'lightly implied'. *Id.*

When Congress extinguished aboriginal title to certain tracts of land, aboriginal title to any water right based on historically irrigated acreage ("HIA") and associated with those tracts remained intact, unless Congress extinguished it as well. *See* <u>United States v. Adair</u>, 723 F.2d 1394, 1413 (9th Cir. (Or.), 1983), *cert. denied sub nom.* <u>Oregon v. United States</u>, 467 U.S. 1252 (1984) ("<u>Adair</u>") (holding that aboriginal title to water continues even after aboriginal title to land ends.) Nothing in the 1924 Act expressly extinguishes or clearly and unambiguously indicates that

Congress intended to extinguish aboriginal title to water rights. The statute is not ambiguous regarding aboriginal title to water; it simply does not address the issue. When land transferred from a Pueblo to a non-Pueblo, the aboriginal title to any Pueblo water right became dormant. The Pueblos' right to use a HIA based water right terminated and the state law title and water right developed by as well as any opportunity to develop a right by a non-Pueblo became active.

It has been said that Pueblo water rights are appurtenant to their lands and, that therefore, aboriginal title to water rights was extinguished when the title to their lands was extinguished. However, as federal rights Pueblo water rights are 'appurtenant' to their lands only for the purpose of being identified and quantified. Appurtenancy, to the extent that it exists in this instance, has no effect on aboriginal title. <u>Adair</u>, 723 F.2d at 1413. Although the 1924 Act mentions appurtenancy of water rights to land, it does so only in regard to non-Pueblo state law rights. §§6-8, 1924 Act.

The Pueblos have reacquired land and water rights located within the exterior boundaries of their grant lands. I have previously held that "...a Pueblo shall not claim water rights for the same tract of land under more than one water rights theory". December 29, 1993 Memorandum Opinion and Order at 6 (4267) ("1993 Opinion"). Therefore, upon reacquisition, state law title to an existing water right

7

becomes dormant and the indicia and elements of the right terminate. Regardless of the program or statute under which the land and water right were reacquired, the aboriginal title reactivated and the elements of the federal Pueblo water right came back into play. Questions regarding deeds and funding sources for reacquisition are not relevant in this instance.

The Pueblos may have acquired lands which are located outside of their grants' exterior boundaries and within their aboriginal territory. I have held that the Indian Claims Commission decisions on the range of a Pueblo's aboriginal territory is *prima facie* evidence of the status of the Pueblo's aboriginal title (May 1, 1987 Memorandum Opinion and Order (3038) at 3-4, 6) and that the Pueblos of San Ildefonso and Nambe have proved the necessary occupancy to support this title. Opinion at 2-3. The aboriginal territory and necessary occupancy of Pojoaque and Tesuque have not yet been addressed. Where Congress has not extinguished aboriginal title to water rights associated with aboriginal lands, it is dormant. *Id.*; February 1987 Opinion at 7-8. If a Pueblo proves it had a history of HIA on these lands, it is entitled to federal water rights based on HIA and having immemorial priority, regardless of the program or statute under which they were acquired. *Id.;* 1993 Opinion at 2-3. Any state law water right developed by a non-Pueblo on acquired HIA lands terminates. If the Pueblo cannot prove HIA on the acquired

lands, it may a) claim a state law water right which exists on the land at the time of Pueblo acquisition (KRM v. Caviness, 925 P.2d 9 (N.M. 1996); NMSA 1978, §72-5-22 (Repl.1985)), b) develop a right under to state law (February 1987 Opinion at 7-8), or c) claim a federal right based on replacement right law.

The principles of replacement right law set forth in my earlier Opinions and as modified below apply to water rights where a Pueblo has acquired lands pursuant to the 1924 Act which are a) not located within its grant boundaries or aboriginal territory or b) located within the grant lands or aboriginal territory, but for which, the Pueblo cannot prove HIA.

Previously, I designated the 1932 Armijo Report and the Martinez maps as the initial basis for determining Pueblos' water HIA rights. April 28, 1987 Findings of Fact and Conclusions of Law (3025) ("April 1987 Findings") at 12 as amended by September 9, 1987 Amended Findings of Fact and Conclusions of Law (3074) at 2-3. I have found that the Pueblos irrigated more acreage during the 1880's and 1890's than in 1932 when Armijo completed the survey. April 1987 Findings at 5-6. I therefore held that HIA acreage (excluding replacement and reservation acreage) included acreage reported by him as irrigable as well as irrigated. April 1987 Findings at 5-6. Further support for this ruling is found in the Congressional intent to make the Pueblos whole again as expressed in the 1924 and 1933 Acts.

This reasoning also supports retaining the measure of exchange rights set forth in the February 1987 Opinion at page 10. The State and the Special Master recommend another approach which would avoid counting again acreage acquired through exchange and already counted in the Armijo Report. This approach should be and shall be REJECTED.

This reasoning also supports adjudicating the Pueblos' water rights in connection with lands affected by replacement irrigation works and other permanent improvements. New acreage irrigated need not be tied to specific acreage in order to qualify for replacement status. I conclude that the proper measure of this acreage shall be obtained through a device such as the subtractive method recommended by the Pueblos and the United States.

This matter is returned to the Special Master for additional findings pursuant to the direction contained herein. He may submit questions to me regarding his approach and recommendations as he deems necessary. He shall identify and enumerate any portions of his 1993 Report which require my consideration in order to carry out this direction.

IT IS SO ORDERED.

/electronic signature/
SENIOR UNITED STATES DISTRICT JUDGE