IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.*
State Engineer,
        Plaintiff,
    v.                                                           66cv06639 M-ACE

R. LEE AAMODT, *et al.,*                    RIO POJOAQUE ADJUDICATION
        Defendants,
   and
UNITED STATES OF AMERICA,
PUEBLO DE NAMBE,
PUEBLO DE POJOAQUE,
PUEBLO DE SAN ILDEFONSO,
and PUEBLO DE TESUQUE,
        Plaintiffs-in-Intervention.

## Memorandum Opinion and Order

      This matter is a part of the general adjudication of all water rights in the Rio Pojoaque/Rio Tesuque stream system. It is before me on the State of New Mexico's November 22, 1996 Motion for Action on the Special Master's September 3, 1996 Report ("Report") Concerning Preliminary Threshold Legal Issues Relating to the Pueblos' Domestic and Livestock Water Rights Claims (5100). The Report considers nine threshold legal issues and requests direction for the Special Master. Having considered pertinent parts of the record and the law and having considered these matters *de novo*, the following rulings are adopted.

      A special master's recommendations on issues of law are merely advisory and are reviewed by the district court *de novo*. NRLB v. Monfort, 29 F.3d 525 (10th Cir.

1994).  In this instance, to the extent that I have not used the Special Master's recommendations, I reject them.

**Prior Rulings and Other Authority**

The Pueblos' aboriginal water rights stem from the federal Indian law doctrine of aboriginal title, as modified by Spanish and Mexican law. New Mexico *ex rel.* Reynolds v. Aamodt, 618 F.Supp. 993, 1010 (D.N.M. 1985) (Aamodt II). Aboriginal rights include domestic rights. *Id.* at 998, 1000-1, 1009-10.  The rights are quantified by historic, customary, and actual uses. *Id.* at 999.  The appropriate historic period for determining these uses is between 1846 and 1924. *Id.* at 1010; April 28, 1987 Findings of Fact and Conclusions of Law (3035), at 2,11-12.  The rights have the first priority in the stream system. Aamodt II, 618 F.Supp. at 998-9, 1009-10; December 29, 1993 Memorandum Opinion and Order ("1993 Opinion") (4267) at 3.  Aboriginal domestic rights may also exist on replacement and reserved lands. Memorandum Opinions and Orders entered on December 29, 1993 (4267) and on April 14, 2000 (5596) ("2000 Opinion").

Pueblos are entitled to federal water rights based on past, present and future uses developed up to 1924. Aamodt II, 618 F.Supp. at 1009-10.  Before the Spanish conquest, they developed all the water rights in the stream system including the

right to use water in the future. *Id.* at 996, 1009. Spanish and Mexican law recognized and preserved these rights and their first priority. *Id.* The Pueblos and non-Pueblos managed their water rights in times of shortage through a system known as *repartimiento. Id.* at 998-99.

The 1848 Treaty of Guadalupe Hidalgo ("Treaty"), 9 Stat. 922-943, Art. 8 recognized and preserved the Pueblos' property rights as they existed in 1846. New Mexico *ex rel.* Reynolds v. Aamodt, 537 F.2d 1102, 1108-9, 1111, (10th Cir. 1976), *cert. denied* 429 U.S. 1121, 97 S.Ct. 1157, 51 L.ED.2d 572 (1977) ("Aamodt I"); Aamodt II, 618 F.Supp. at 1000, 1010; February 26, 1987 Memorandum Opinion and Order (2977) ("February 1987 Pueblo Opinion") at 8. This protection extended to all water rights including the Pueblos' right to develop future uses in an amount necessary to maintain the community. *Id.* at 998-9, 1010.

Through the Confirmation Act of 1858, 11 Stat. 374 ("1858 Act"), Congress confirmed the Pueblos' title and relinquished all title and claim of the United States to their lands and water rights. Aamodt II, 618 F.Supp. at 1001. It reserved nothing. Aamodt I, 537 F.2d at 1111. The Pueblos thus received a grant in fee simple to their lands and water rights. *Id.*; Aamodt II, 618 F.Supp. at 1009. Congress had validated all Pueblo property rights that had been developed up to that time. Aamodt I, 537 F.2d at 1111.

Congress took no action to extinguish Pueblo water rights until its passage of the 1924 Pueblo Lands Act, 43 Stat. 636 ("1924 Act"). Aamodt II, 618 F.Supp. at 1009; February 1987 Pueblo Opinion at 8. The Pueblos continued to develop their future rights up until 1924. *Id.* at 1010.

With the passage of the 1924 and 1933 Acts ("the Acts"), Congress took 'affirmative political action' to end controversy regarding the Pueblos' land and water rights once and for all by identifying and quieting title to all rights developed prior to 1924. §§1, 3, 1924 Act; Mountain States Tel. & Tel. v. Pueblo of Santa Ana, 472 U.S. 235, 240, 244, 105 S.Ct. 2586 (1985); Aamodt I, 537 F.2d at 1105-6; Aamodt II, 618 F.Supp. at 1004; June 10, 1983 Memorandum Opinion and Order (728) at 13-5; February 26, 1987 Memorandum Opinion and Order re non-Pueblo Rights (2978) ("February 1987 Non-Pueblo Opinion") at 5; 2000 Opinion at 5. To accomplish this end, it expressly protected all prior rights in §9 of the 1933 Pueblo Compensation Act, 48 Stat. 108 ("1933 Act"). The effect of this Congressional action was to fix Pueblo rights, that is, it terminated their right to develop further future water uses with aboriginal priority. Aamodt II, 618 F.Supp. at 1010.

The Pueblos did not keep livestock before the Spanish conquest. May 1, 1987 Memorandum Opinion and Order (3038) ("May 1987 Opinion") at 5. Later, the Spanish recognized and protected their use of water for these purposes. Aamodt II,

4

618 F.Supp. at 997, 1000. This protection continued through to the American period. Aamodt II, 618 F.Supp. at 1000-5. Pueblo livestock rights have priorities based on the date of first use. February 1987 Pueblo Opinion at 9. Priorities which predated United States acquisition of these lands were protected by the Treaty. Aamodt I, 537 F.2d at 1105, 1108-9; Aamodt II, 618 F.Supp. at 1000, 1010. Those developed before 1924 are protected by Congress. §9, 1933 Act. The quantity of these rights is based on historic, customary, and actual use. Aamodt II, 618 F.Supp. at 999.

Pueblos may also have rights defined by state law standards and requirements for uses initiated after 1924. 1993 Opinion at 6; February 1987 Pueblo Opinion at 9; December 1, 1986 Memorandum Opinion and Order (2879) at 2.

Aboriginal rights may be satisfied from either surface water or physically interrelated groundwater which comprise an integral part of the hydrologic cycle. Aamodt II, 618 F.Supp. at 1010.

**Domestic Water Rights**

The rules applied to the Pueblos' irrigation rights apply generally to their domestic rights, unless otherwise noted.

**Issue 1:** Whether, under the District Court's Previous Memorandum Opinions and Orders of September 18, 1985, February 26, 1987 and May 1, 1987, the Pueblos' aboriginal domestic water rights should be quantified by what they were

actually using for those purposes from 1846 to 1924 and whether any additional rights must be acquired under state law and have state law priority. Report at 11.

Aboriginal domestic water rights are quantified by the water actually used by the Pueblos between 1846 and 1924. Unless governed by replacement or reserved right rules, domestic rights acquired after 1924, are defined by state law standards and requirements.

The Special Master recommends that I apply a system of *repartimiento* to the quantification and management of Pueblo domestic rights. *Repartimiento* was a flexible system of the Spanish and Mexican period for allocating and managing water in times of shortage. Aamodt II, 618 F.Supp. at 997-99 (detailing the history of *repartimiento* and the Pueblos). Some non-Pueblo water rights arose from *repartimiento* practices. February 1987 Non-Pueblo Opinion at 13. The system, however, is not a right and therefore did not survive the change in sovereigns. Its characteristics of uncertainty and balancing uses among people are not appropriate in this context. Aamodt I, 537 F.2d at 1113; Aamodt II, 618 F.Supp. at 1005. I reject the recommendation.

The State of New Mexico ("State") argues that the Pueblos' rights including their domestic rights should be measured by the maximum *annual* water used between 1846 and 1924. I disagree. Their domestic rights are quantified by the maximum *actual* water used between 1846 and 1924. The Pueblos do not lose water

rights by operation of non-use, abandonment or any other means except through express action by Congress. Aamodt I, 537 F.2d at 1110; Aamodt II, 618 F.Supp. at 1005, quoting §9, 1933 Act. Such action has not occurred. Aamodt I, 537 F.2d at 1110; Aamodt II, 618 F.Supp. at 1010. If the rights were limited to annual use, the Pueblos would have lost them when specific uses were discontinued for a period of time. Rather, the water rights are cumulative and are measured by all actual use during the prescribed period.

**Issue 2:** Whether the Pueblos own groundwater under either Spanish or Mexican law and, in any event, whether such ownership was recognized by the Treaty of Guadalupe Hidalgo or the United States. Report at 35.

Under any sovereign's law, the Pueblos have not owned water, but rather have developed rights to use water. The Pueblos and United States recognize this, and instead, claim rights to the use and control of some portion of the groundwater. They are correct. Their rights may be satisfied with either or both surface or interrelated groundwater.

**Issue 3:** Whether any 'rights' of the Pueblos under Spanish or Mexican law as of 1846 to make future consumptive uses of water in addition to water actually devoted to use were imperfect or inchoate and, therefore, not protected by the Treaty. Report at 42.

The Treaty protected rights recognized by other sovereigns. Spanish and Mexican law recognized and protected the Pueblos' right to develop water uses for

future needs. Future rights are inchoate rights because the water has not yet put to use. These inchoate rights were protected by the Treaty. The Pueblos cannot develop more inchoate rights because all their federal water rights were fixed by the 1924 Act.

**Issue 4:** Whether any 'rights' to make future consumptive uses of water in addition to water actually put to use by the Pueblos, which rights were protected by the Treaty of Guadalupe Hidalgo were extinguished by the 1866, 1870 and 1877 Acts. Report at 46.

Certain non-Pueblo Defendants assert that the Pueblos' right to develop future uses was limited by the Acts of 1866, 1870 and 1877. I am not persuaded by their arguments. When Congress enacted this legislation, the Pueblos' right to future uses had been preserved since time immemorial under Spanish, Mexican and United States federal law. The water destined to satisfy the right protected by the Treaty and recognized by the 1858 Act was not a part of the public waters subject to the 19th century Acts. Any non-Pueblo rights that have vested and accrued since the Spanish conquest are subject to Pueblo future uses developed between 1846 and 1924.

**Issue 5:** Whether the Fifth Amendment of the United States Constitution prohibits the recognition of any rights of the Pueblos to 'additional consumptive

uses of water' initiated subsequent to 1846, alternatively 1858 or 1866, where the priority date predates such actual uses. Report at 48.

Having ruled, it is not necessary to address the Fifth Amendment claim. The non-Pueblos' water rights have always been subject to *all* of the Pueblos' prior water rights, including future uses. 1933 Act, at §9; Aamodt I, 537 F.2d at 1110, 1113; Aamodt II, 618 F.Supp. at 1005 (quoting the Pueblo Lands Board Report on Nambe, JP exhibit 23 at 5), 1009-10.  If there is not enough water in the stream system to serve both, the junior users must forgo the use of water.

**Issue 6:** Whether the Pueblos acquired from the United States common law riparian rights to withdraw and use groundwater either pursuant to the 1858 Act or the patents issued thereto. Report at 53.

I am not persuaded by the United States' and Pueblos' argument that the United States had a riparian right to groundwater prior to the 1858 Act which then passed to the Pueblos upon passage of the Act.  Traditionally, riparian rights involve surface water and subsurface water, that is interrelated groundwater, and not percolating or deep groundwater. Tarlock, *Law of Water Rights and Resources*, 3:12, 3:24 (2000).  The Pueblos may use interrelated ground and surface water to satisfy their rights.  They do not, however, have an unlimited right to tap the subsurface water.

**Issue 7:** Whether the 'Pueblo Water Rights Doctrine', if it exists at all, applies to these four Pueblos and whether the claims of the Pueblos in connection therewith are barred or precluded because of the failure to timely assert said claims. Report at 72.

The 'Pueblo Water Right Doctrine', if it exists at all, does not apply to the Pueblos.

**Issue 8:** Whether the Pueblos' domestic rights include commercial, industrial or municipal uses. Report at 77.

I construe the term 'domestic' broadly.  The Pueblos' aboriginal domestic water rights include settlement or community water rights and may include commercial or industrial uses to the extent that such uses were developed for these purposes before 1924.

The non-Pueblo Defendants argue that domestic rights should be quantified by actual, customary and historical uses, that is, traditional uses of the Spanish and Mexican period.  I find this approach too crabbed and reject it.  The standard is actual, customary and historical uses between 1846 and 1924.

**Livestock Water Rights**

**Issue 9:** The issue is whether the Special Master's recommendations on Issues 1-8 re Pueblo domestic water rights apply to Pueblo livestock water rights. Report at 90.

The Special Master's recommendations do not generally apply to Pueblo livestock water rights.

Prior to European contact, the Pueblos did not keep livestock, and therefore, have no aboriginal priority for livestock water rights. Because they husbanded livestock after the Spanish conquest, these rights are entitled to priorities based on first use. May 1987 Opinion at 5. The rights are quantified by actual, customary and historic use between the Spanish conquest and 1924.

The State's motion for action is granted in that action is taken.

The Special Master requests instruction as to whether the parties may present more evidence regarding these issues.

They may.

Evidentiary hearings arising from these matters may be initiated after the present stay on matters before the Special Master is lifted.

IT IS SO ORDERED.

                                                /electronic signature/
                                  SENIOR UNITED STATES DISTRICT JUDGE