IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.*
State Engineer,
      Plaintiff,

    v.

R. LEE AAMODT, *et al.*,
      Defendants,

    and

UNITED STATES OF AMERICA,
PUEBLO DE NAMBÉ,
PUEBLO DE POJOAQUE,
PUEBLO DE SAN ILDEFONSO,
and PUEBLO DE TESUQUE,
      Plaintiffs-in-Intervention.

03 JUN 30  PM 5: 23

66cv06639 MV-LCS-ACE

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on New Mexico's Motion for Expedited Preliminary Injunction Against the Pueblo of Pojoaque ("State's Motion") and supporting memorandum, filed September 12, 2002 **[Docket Nos. 5991 and 5992]**, as well as the motion to dismiss contained in the Pueblo of Pojoaque's Response to New Mexico's Motion for Expedited Preliminary Injunction ("Pueblo's Response"), filed October 28, 2002 **[Docket No. 6011]** and all related pleadings. The State seeks to enjoin the Pueblo of Pojoaque ("the Pueblo") from diverting water in "excess of its lawful water rights." New Mexico's Memorandum in Support of Motion for Expedited Preliminary Injunction Against the Pueblo of Pojoaque ("State's Memorandum"), p. 1. **[Docket No. 5992]**. United States District Judge E. L. Mechem referred the State's Motion to United States Magistrate Judge Leslie C. Smith ("Magistrate Judge") pursuant to 28 U.S.C. Section

636 (b)(1)(B). Order of Reference Relating to Motion for Preliminary Injunction, filed September 16, 2002 **[Docket No. 5993]**.

The Magistrate Judge treated the first 11 pages of the Pueblo's Response as a motion to dismiss the instant action on grounds that (1) the State lacks standing to bring the action; (2) the case or controversy is not yet ripe for determination; and (3) this Court lacks jurisdiction to hear the proceeding. Magistrate Judge's Proposed Findings of Fact and Recommended Disposition ("Proposed Findings"), filed February 3, 2003, pp. 27-28, 36. **[Docket No. 6044]**. The Magistrate Judge heard oral argument on the Pueblo's motion to dismiss on November 19, 2002 and on the merits of the State's Motion for a preliminary injunction on November 26, 2002. At the merits hearing, the Magistrate Judge received a number of exhibits and heard the testimony of several witnesses. Transcript of Proceedings, November 26, 2002 ("Tr."). Subsequently, the case was transferred to this Court. Minute Order, filed December 31, 2002 **[Docket No. 6041]**.

Following entry of the Proposed Findings, the parties filed timely objections with this Court pursuant to 28 U.S.C. Section 636 (b)(1). Pueblo of Pojoaque's Objections to Magistrate Judge's Proposed Findings and Recommended Disposition ("Pueblo's Objections"), filed February 18, 2003 **[Docket No. 6049]**; State of New Mexico's Objections to Magistrate Judge's Proposed Findings and Recommended Disposition ("State's Objections"), filed February 18, 2003 **[Docket No. 6050]**; and Defendants' Objections to Magistrate Judge's Proposed Findings and Recommended Disposition ("Defendants' Objections"), filed February 18, 2003 **[Docket No. 6051]**. Thereafter, the parties filed timely responses. United States' Response to Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition ("United States' Response to Objections"), filed March 4, 2003 **[Docket No. 6056]**; Pueblo of Pojoaque's Response to State of New Mexico's Objections to

2

Magistrate Judge's Proposed Findings and Recommended Disposition, filed March 5, 2003 [**Docket No. 6057**]; Pueblo of Pojoaque's Response to Defendants' Objections to Magistrate Judge's Proposed Findings and Recommended Disposition ("Pueblo's Response to Defendants' Objections"), filed March 6, 2003 [**Docket No. 6058**]; and Three Pueblos' Response to the Objections filed by the State of New Mexico and Certain Defendants, filed March 7, 2003 [**Docket No. 6059**].[1] Finally, the Defendants timely filed the Defendants' Reply in Support of Their Objections to the Magistrate's February 3, 2003 Proposed Findings, filed March 20, 2003 [**Docket No. 6061**].

Having conducted a *de novo* review of the motions and the record before the Magistrate Judge, and having considered the Magistrate Judge's Proposed Findings, this Court finds that the Proposed Findings as modified and set forth below should be **ADOPTED**; New Mexico's Motion for Expedited Preliminary Injunction Against the Pueblo of Pojoaque is not well-taken and should be **DENIED** without prejudice; and the Pueblo's motion to dismiss is not well-taken and should be **DENIED** with prejudice.

## PRELIMINARY MATTERS

A few matters require discussion prior to an analysis of the objections before this Court. First, counsel incorrectly refer to the Magistrate Judge as "magistrate" and the district court as "magistrate court." Effective December 1, 1990, the United States Congress abolished the title and address of "United States Magistrate" and changed the title and address to that of "United States Magistrate Judge." *See, e.g.*, 28 U.S.C. Section 631 (Historical and Statutory Notes, Change of

---

[1] The Three Pueblos are the Pueblos of Nambé, San Ildefonso and Tesuque.

Name). The jurisdiction and authority of a United States Magistrate Judge as granted by Congress are set forth in 28 U.S.C. Section 636. *See also Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1461 (10th Cir. 1988). Although Magistrate Judges are not Article III judicial officers, they are judicial officers appointed and designated by district judges of the United States District Court. *See* 28 U.S.C. Sections 631-632. They operate under the authority of the district court. Nowhere does the statute use the term "magistrate court." *Id.* Thus, counsel are instructed to use the terms "United States Magistrate Judge" or "Magistrate Judge."

Second, counsel should refrain from personally attacking the designated Magistrate Judge when making objections to his proposed findings and disposition. Certain counsel displayed blatant disrespect for the Magistrate Judge. The objections include statements such as, "[t]he State is frankly puzzled by the Magistrate's complete failure...." State's Objections, p. 10; "[t]he Magistrate's recommendation ... defies both logic and common sense," *id.* at p. 15; "the Magistrate apparently made this Finding due to the ease in pinning down," Pueblo's Objections, p. 6; "[the Magistrate Judge's finding] is made of pure air ..." *id.* at p. 13; and "the Magistrate's cut and paste opinion," Pueblo's Response to Defendant's Objections, p. 8. Such disparaging remarks have no place in judicial proceedings. Counsel will refrain from gratuitous *ad hominem* attacks on the Magistrate Judge. As a judicial officer of the district court, he and the position are entitled to courtesy and respect.

## BACKGROUND

During a 2001 business flight over the Pueblo, (then) State Engineer Mr. Thomas C. Turney first became concerned about the extent of the Pueblo's water use. Tr. at pp. 17-18. After meeting with the Pueblo's Governor, Jake Viarrial, the State Engineer sent a letter dated March 12, 2002 to

4

the Governor. Tr. at pp. 19-20; State's Exhibit 5.  In this letter, the State Engineer expressed concern

"that the Pueblo is using water far in excess of its adjudicated water rights." He further stated,

> "there has been no commitment by the Pueblo either to defer new uses or to acquire
> water rights sufficient to cover its existing uses. ...[I]f the Pueblo does initiate
> irrigation of these new golf courses, I will promptly seek an order from the District
> Court curtailing that use and requiring the Pueblo to either reduce its total uses to an
> amount within the rights determined by the Court or requiring acquisition of
> sufficient water rights from other sources, on an enforceable schedule to cover its
> uses in excess of those rights."

State's Exhibit 5.  Thereafter, on or about April 2002, the State Engineer ordered an investigation

of the Pueblo's water use. Tr. at p. 21.  On June 21, 2002, pursuant to the State Engineer's order,

aerial photography was taken of the area in question. *Id.*


## STANDARD OF REVIEW

28 U.S.C. Section 636(b)(1) sets out the standard of review for objections to a Magistrate

Judge's proposed findings or recommendations.  Section 636(b)(1) provides in pertinent part:

> A judge of the court shall make a de novo determination of those portions of the
> report or specified proposed findings or recommendations to which objection is
> made. A judge of the court may accept, reject, or modify, in whole or in part, the
> findings or recommendations made by the magistrate judge. The judge may also
> receive further evidence or recommit the matter to the magistrate judge with
> instructions.

*Id.*  This Court is the final arbiter of this matter. *Id.*; *United States v. Raddatz,* 447 U.S. 667, 673-5,

680, 682 (1980).  This Court must review any portion of the Magistrate Judge's recommendations

to which a party filed a timely objection. *In re Griego,* 64 F.3d 580, 583-4 (10th Cir. 1995).

## ANALYSIS

### Stay Issue

The Pueblo objects to the Magistrate Judge's recommendation that this Court find that the State's Motion does not constitute a violation of the Stipulated Order Staying Further Proceedings Before the Special Master ("Stipulated Order"), filed August 31, 2000 **[Docket No. 5623]**. Proposed Findings at pp. 27, 36; Pueblo's Objections at 4. The Pueblo argues that "[o]n its face, the State's motion violates this Court's August 31, 2000 Order." *Id.*

This Court has reviewed the entire record on this matter, including: the Pueblos' and United States' Consent Motion of the Pueblos and United States ("Consent Motion"), filed May 15, 1998 **[Docket No. 5401]**, sending the Pueblos' domestic and livestock rights to settlement; the Court's Order, entered May 28, 1998 **[Docket No. 5409]**, granting the Consent Motion;[2] the Magistrate Judge's Order, entered June 7, 1999 **[Docket No. 5517]**, adopting the settlement plan proposed by the parties; the Stipulated Order which formally extended the subject of the settlement negotiations to all Pueblo water rights; and the Court's subsequent Orders extending the settlement negotiations, entered March 12, 1991 **[Docket No. 5829]**, September 20, 1991 **[Docket No. 5924]**, March 25, 1992 **[Docket No. 5982]**, October 30, 1992 **[Docket No. 6009]**, and February 19, 1993 **[Docket No. 6053]**.

The Consent Motion contains no request for a stay, and none of the Court's other orders stays any action before it. Furthermore, contrary to the Pueblo's assertion, the Stipulated Order on its face limits the stay to matters before the Special Master. The Stipulated Order provides in pertinent part:

---

[2] This Order sent the parties to Magistrate Judge Leslie C. Smith with whom they negotiated a settlement plan.

6

> The parties believe that the mediation will be more expedient and will have a greater chance of success if further proceedings before *the Special Master* are stayed so that they can devote all their attention and economic resources toward mediation and settlement of all major aspects of the adjudication *rather than also having to focus on portions of the case currently before the Master.*

Stipulated Order, p. 2, ¶5 (emphasis added). The Court's intention to limit the stay to the proceedings before the Special Master is further reflected by its entry of Memoranda Opinions and Orders on January 31, 2001 **[Docket No. 5642]** (concerning the Special Master's report on threshold legal issues regarding the Pueblos' domestic and livestock claims) and on July 10, 2001 **[Docket No. 5916]** (concerning the Special Master's report on Nambé Pueblo's reserved rights). Therefore, the objection is not well-taken, and the Magistrate Judge's recommendation is adopted.

### Jurisdictional Challenge

The Pueblo objects to the Magistrate Judge's recommendation that its jurisdictional challenge to the State's standing to bring this matter be denied with prejudice. Pueblo's Objections, pp. 4-5; Proposed Findings, pp. 27, 36. The Pueblo's objection is without merit. As the Magistrate Judge recognizes in the introduction of his Proposed Findings, the State's Motion "is a part of the general stream system adjudication of all water rights in the Rio Pojoaque stream system." Proposed Findings, p. 1. The State Engineer has a statutory obligation to administer and protect the public waters of the State of New Mexico. *See* N.M.S.A. 1978 Sections 72-1-1, 72-2-1, and 72-12-1; *see also* N.M. Const. Art XVI Section. 2; Tr. at pp. 17, 20, 27. Under the state statutes, he is responsible for the general supervision, the measurement and the distribution of the waters of the State of New Mexico. Tr. at pp. 17, 20, 27. Accordingly, contrary to the Pueblo's assertions, the answer to whether the State has standing is the same as it was when the Pueblos challenged the State's right to bring this suit in the first place. *New Mexico ex rel. Reynolds v. Aamodt*, 537 F.2d 1102 (10th Cir.

7

1976), *cert. denied*, 429 U.S. 1121 (1977) ("*Aamodt I*"); Pueblos' Response, p. 6. In *Aamodt I*, the

Tenth Circuit ruled:

> In the case at bar the State does not act as *parens patriae*. It brought suit in accordance with the provisions of §§ 75-4-4 through 75-4-8, N.Mex.Stat.Ann., 1953, for determination of rights to the use of water of the Nambé-Pojoaque System. Adjudication of rights is essential to the operation of the appropriation doctrine. *See El Paso & R.I. Ry. Co. v. District Court*, 36 N.M. 94, 8 P.2d 1064, 1069. The New Mexico constitution provides, Art. XVI. § 2, that the unappropriated water of every natural stream belongs to the public and is subject to appropriation in accordance with the laws of the State. Acting under statutory authority the State sued all persons, both Indians and non-Indians, claiming water rights. The presence of all claimants is necessary for a decree to be of any value. *See United States v. District Court of Eagle County*, 401 U.S. 520, 525, 91 S.Ct. 998, 28 L.Ed.2d 278. In a water adjudication suit collision between private rights and federal rights does not affect the validity of the proceedings or the right of the State to maintain the suit. *Ibid.* at 526, 91 S.Ct. 998; *see also Colorado River Water Conservancy District v. United States*, --- U.S. ---, 96 S.Ct. 1236, 47 L.Ed.2d 483, 44 L.W. 4372, 4375 (1976). The Pueblos' motion attacking the standing of the State of New Mexico is denied.

*Id.* at 1107-1108. Similarly, in this instance, the State Engineer has standing to move for a

preliminary injunction against the Pueblo because under his statutory obligations, he is challenging

a use of water that he believes encroaches upon the unappropriated water of this stream system

which "belongs to the public and is subject to appropriation in accordance with the laws of the

State." *Id.* Therefore, the Pueblo's objection is not well-taken. This Court concludes that the State

has standing to pursue alleged violations of the Court's rulings and of state law. Therefore, this Court

adopts the Magistrate Judge's recommendation on this matter.

In its objections, the Pueblo makes no specific reference to the ripeness issue raised in its

response. Pueblo's Objections, p. 5; Pueblo's Response, pp. 4-5. The Pueblo does, however,

announce that it continues to stand "on its remaining arguments and authorities in its Motion to

Dismiss as presented at page 3-11" of its Response. If by such a statement the Pueblo means to

renew its ripeness argument, the Pueblo's assertion that this matter is not "ripe" for adjudication also fails. In essence, the Pueblo argues that its water rights are abstract until the United States Supreme Court has ruled upon them; therefore, no one may challenge its uses at the present time. *See, e.g., Pueblo's Response*, pp. 9-10 (citations omitted). One purpose of a preliminary injunction is to maintain the *status quo* until the merits of a case can be decided. *See, e.g., Pharmaceutical Research and Mfrs. of America v. Walsh*, 123 S.Ct. 1855 (2003) (lower courts sometimes accompany stays with an injunction designed to preserve the *status quo*) (citations omitted). At present, the evidence appears to support the State's position that the Pueblo's water use exceeds the amount thus far identified for it. Consequently, the State's request to enjoin the Pueblo from using water in excess of those rights is ripe for decision. This Court adopts the Magistrate Judge's recommendation to deny the Pueblo's Motion to Dismiss. Proposed Findings, pp. 27, 36.

### Objections to Proposed Findings

Objections have been raised to all of the Proposed Findings except Findings 4d, 4f, 4h, 5, 6a, 6d, 7 and 15.[3]

Proposed Finding 7 recognizes the benefits to the Pueblo and non-Pueblo communities arising from the Pueblo's development projects. The Proposed Finding contains citation to oral argument. Although no party objected to this support, this Court reviewed the record for the

---

[3] Defendants object to the statement in the Background section of the Proposed Findings at footnote 2 on page 4 which indicates that wells in this basin had to be permitted after March 18, 1907. They correctly observe that permitting of wells is not required until an underground basin is declared because, until such time, the State Engineer has no jurisdiction over groundwater uses. N.M.S.A. 1978 Section. 72-12-20 (1997 Supp.); *McBee v. State*, 399 P.2d 110 (N.M. 1965); *State ex rel. Reynolds v. Mendenhall*, 362 P.2d 998 (N.M. 1961). In this instance, the basin was not declared until November 29, 1956. Rules and Regulations Governing the Drilling of Wells and Appropriation and Use of Ground Water in New Mexico (1995) Arts. 7-25. Therefore, as the Defendants correctly point out, permits were not required for wells drilled before that date.

proposed finding and finds that witness testimony amply supports it. For instance, Mr. Mosely, the Pueblo's chief financial officer, testified as to the number of Pueblo employees which come from both communities. Tr. at p. 142. Mr. Alyn C. Martinez, the Pueblo's infrastructure manager, testified as to its sewage and potable water systems which serve the Santa Fe County fire department and residential and commercial users from the communities. Tr. at pp. 171-196. Finally, Mr. James Pierce, the Pueblo's chief financial officer for trial government programs and services, testified as to the Pueblo's economic development, health and education projects. Tr. at pp. 199-208. This Courts finds that Proposed Finding 7 is well supported in the evidence and therefore adopted it.

### Proposed Findings 1-3 - Date of *Status Quo*

*Status quo* is the "last uncontested status between the parties which preceded the controversy until the final outcome of the final hearing." *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1100 FN 8 (10th Cir. 1991) (citations omitted). The Magistrate Judge recommends June 21, 2002 as the appropriate date for determining the *status quo*. Proposed Findings 1-3, 3a and 3b, p. 29. The evidence presented at the November 26, 2002 hearing on the merits describes the Pueblo's water use as of March 12, 2002, June 21, 2002 and October 28, 2002. *See e.g.*, Tr. at pp. 48, 61, 85-86, 98, 125-26 and 128. The Magistrate Judge found the State's testimony of the Pueblo's water use on June 21 to be the most credible. Proposed Finding 3. He especially relied on the June 21, 2002 aerial photographs to determine the Pueblo's current, actual diversion of water for purposes of the *status quo*. Proposed Finding 1.[4] The Magistrate Judge then determined June 21, 2002 as the date of *status*

---

[4] The Pueblo also objects to Proposed Finding 1 because the Magistrate Judge cited only the oral argument of counsel for support. Pueblo's Objections, pp. 6-7. The Pueblo argues (without supporting authority) that oral

*quo* relating to the Pueblo's water use. Proposed Finding 2. He observed in Proposed Finding 3a that the Pueblo's evidence supporting a date of *status quo* was less credible than that of the State and in Proposed Finding 3b[5] that the Pueblo did not dispute any material part of the State's evidence. Proposed Findings, p. 29. The Pueblo, the State, and the Defendants object. Pueblo's Objections, pp. 6-7; State's Objections, pp. 20-22; Defendants' Objections, pp.14-16.

The State and the Defendants assert that there is sufficient evidence in the record to support a finding of March 12, 2002 as the date of *status quo*. State's Objections, pp. 20-22; Defendants' Objections, pp. 14-16. The State claims that it made its formal demand to the Pueblo regarding the State's concerns about the Pueblo's alleged excessive water use through the State Engineer's March 12, 2002 letter to the Governor of the Pueblo. Tr. at pp. 19-21; State's Exhibit 5; State's Objections, pp. 20-22; Defendants' Objections p. 15. The State and the Defendants point to the testimony of the Pueblo's witness, golf course manager Mr. Dennis W. Dulaney, and argue that the record contains sufficient evidence to determine the Pueblo's water use as of March 12, 2002. State's Objections, pp. 20-22; Defendants' Objections p. 15. Mr. Dulaney testified that on that date, the Pueblo was

---

argument constitutes neither evidence nor testimony. *Id.* The Court's examination of the testimony reveals that there is ample evidence to support the June 21, 2002 date in spite of the reliance on oral argument. The State put on four witnesses who established that aerial photography was performed on June 21, 2002 and that it was used to determine the Pueblo's water use as of that date, including State Engineer Turney, Dr. Dario Rodriguez-Bejarano, a member of the State Engineer's hydrographic survey bureau and the State's expert on the interpretation of aerial photography; Mr. Brian Wilson, chief of the Office of the State Engineer's Water Use and Conservation Bureau, and the State's expert for determining water use, and Mr. Roger Kletzli, a photogrammetrist for Interquest Systems, the State's contractor for aerial photography in this matter. Tr. at pp. 21, 85, 48, 61, 98. Nowhere has the Pueblo objected to the above testimony relating to the date of the photography or its use for determining the amount of acreage under irrigation. The Court finds the evidence supports Proposed Finding 1 and overrules the Pueblo's objection to the use of oral argument.

[5] The Pueblo also objects to Proposed Finding No. 3b because the Magistrate Judge relied on oral argument to support his observation that the Pueblo did not "dispute any material portion of the State's testimony regarding current use." Pueblo's Objections, p. 6. However, the Pueblo fails to point to any examples of where it materially disputes the facts presented by the State on current uses. *See* Tr. at 35-66, 103-133, 137-144, 172-193. This Court overrules this unsupported objection.

11

irrigating 18 holes plus a driving range. Tr. at p. 125. However, he also testified that seeding of a new area had begun in the Spring of 2002. Tr. pp. 107-108. It is not clear from the evidence whether this area was under irrigation as of March 12. This Court finds Mr. Dulaney's testimony vague for the purposes of determining the water use on March 12, 2002.

The State did not present its own evidence of water use as of March 12, 2002 but relied solely on Mr. Dulaney's testimony to support its claim regarding the Pueblo's use as of that date. *See* Tr. at pp. 33-67. In fact, the State Engineer testified that he had not authorized the investigation of the Pueblo's uses until about a month after that date. Tr. at p. 21. Moreover, the State did not explain how it arrived at its claim that, as of March 12, 2002, the Pueblo was diverting more than 391.32 a/f/a and depleting more than 321.24 a/f/a. State's Objections, p. 22. This Court rejects the argument of the State and the Defendants that there is sufficient evidence to support finding a date of *status quo* as of March 12, 2002.

The Pueblo claims, without specific discussion (and State's evidence notwithstanding) that the Magistrate Judge's determination of June 21, 2002 as the *status quo* date is arbitrary, capricious and that it is made without regard to legal standards. Pueblo's Objections, p.6. The Pueblo asserts that the evidence of water use on October 28, 2002 is as well supported as the evidence for the June 21st date. *Id.* October 28, however, post-dates the September 12, 2002 filing of the State's Motion and clearly is not the "last uncontested status between the parties which preceded the controversy." This Court rejects the Pueblo's claim.

Brian Wilson, chief of the Office of the State Engineer's Water Use and Conservation Bureau and the State's expert on water use ("expert Wilson"), presented evidence regarding the Pueblo's diversions and depletions as of June 21, 2002. Tr. at pp. 35-61. In testifying about the quantification

of the water requirements for the Pueblo's golf course, expert Wilson relied on a table showing irrigated acreage data compiled from the June 21 aerial photographs. Tr. at p. 35.

Dr. Dario Rodriguez-Bejarano, a member of the State Engineer's hydrographic survey bureau and the State's expert on the interpretation of aerial photography ("expert Rodriguez-Bejarano"), prepared the table used by expert Wilson. *Id.* Expert Rodriguez-Bejarano testified, that from the aerial photographs, he was able to identify acreage at the Pueblo's golf course that was (a) lacking cultivated vegetation, (b) newly seeded or (c) covered by established grass. Tr. at pp.81-87 Using a computer graphics program, he outlined these areas and determined the amount of acreage of each. *Id.* at 85-86. He prepared a table of his results and sent it to expert Wilson. *Id.* at p.88.

After testifying that for a period of time newly seeded areas require more water than established areas, expert Wilson stated that he was able to determine the amount of water necessary for each area under irrigation listed in the Rodriguez-Bejarano table, and thus was able to determine the amount of water the Pueblo was using for irrigation of the golf course as of June 21, 2002. Tr. at pp. 35-39, 45-65. Golf course manager Dulaney also testified that newly seeded areas require more water, about 40 percent more than established areas. Tr. at p. 115.

Having considered the testimony of water use as of March 12 and June 21 and having rejected testimony of water use as of October 28, this Court finds that the best evidence of the Pueblo's water use is based on analysis of the June 21, 2002 aerial photographs. Therefore, this Court adopts the Magistrate Judge's Proposed Findings 1-3, 3a and 3b.

**Proposed Findings 4, 6, & 8 - Diversion and Depletion Amounts**

Proposed Findings 4[6]. 6. 8 and their sub-parts relate to the amount of water that the Pueblo (a) was using on June 21, 2002, (b) is projected to use upon completion of their proposed projects, and (c) is entitled to use under the Court's rulings as they stand today, respectively. Proposed Findings, pp. 29-34. Specifically, Proposed Findings 4, 4a[7], 4b, 4c, 6, 6b and 6c[8] are based on expert Wilson's testimony concerning the information reasonably relied upon by experts in his field and concerning the methodology he used to arrive at the amounts of diversion and depletion which he recommended for the Pueblo's current and future uses. Tr. at p. 35. Expert Wilson also gave his estimates as to the diversion and depletion of water as of June 21, 2002. Tr. pp. 48-49. The Pueblo offered no testimony to the contrary. This Court rejects the Pueblo's claim regarding Proposed Findings 4, 4a, 4c, 6, 6b and 6c.

The Pueblo objects to the Magistrate Judge's Proposed Findings 4a and 6b on the grounds that six, as opposed to the Magistrate Judge's finding of four holes of the second phase of the golf course, Butterfly 9, were already under irrigation. Pueblo's Objections. pp. 8, 9. The Pueblo relies

---

[6]  The Pueblo objects to inclusion of the Po Suwae Geh restaurant in Proposed Finding 4c, which lists enterprises for which the Pueblo provides water. The Pueblo states that the Restaurant is closed and that the Pizza Inn now occupies the same location. *See* Tr. at p. 60. Although this assertion is not specifically reflected in the evidence, it is noted.

[7]  The Pueblo also objects to the Magistrate Judge's references to oral argument as support for Proposed Findings 4a, and 4b as to the Pueblo's current use of water at the golf course. Pueblo's Objections, p. 7. This objection is without merit. The Magistrate Judge also supported these Proposed Findings with citations to testimony or evidence. Proposed Findings 4a and 4b. Proposed Finding 4a lists the Pueblos' watering activities at the golf course on June 21, 2002 and is supported by reference to the testimony of the Pueblo's witness, golf course manager Dulaney, who relates the progress of irrigation development over time. Tr. at pp. 105-109, 126-129; State's Exhibits 2 and 3. Proposed Finding 4b lists estimated diversions for these activities and is supported by expert Wilson's testimony. Tr. at pp. 45-48, 52; State's Exhibits 2 and 3. Accordingly, this Court overrules the Pueblo's objection to the reliance on oral argument.

[8]  It is unclear why the Pueblo objects to Proposed Finding 6c regarding the size of the proposed hotel since the Magistrate adopted the Pueblo's figure. Tr. at p. 161.

14

on the testimony of golf course manager Dulaney in which he stated that "to the best of [his] knowledge," as of June 21, 2002, an additional six holes had been seeded on the Butterfly 9 course. Tr. at pp. 128-9. This language is equivocal. Instead, the Magistrate Judge relied on the testimony of expert Rodriguez-Bejarano who testified that, based on his interpretations of the aerial photographs, an additional 4-holes and driving range were under irrigation as of June 21, 2002. Tr. at p. 94. This Court rejects the Pueblo's objections to Proposed Findings 4a and 6b.

Proposed Finding 8 and its subparts set forth the Magistrate Judge's findings as to the Pueblo's present measure of water rights are based on existing Court rulings and parties' submissions. Pueblo objects to this measure. Pueblo's Objections, pp. 9-12. Both the Pueblo and the United States assert that the Magistrate Judge misconstrues the doctrine of law of the case in discussing the measure of the Pueblo's federal right at this stage of the proceedings, because law of case "is decided upon appeal and required to be followed by the trial court on remand or in subsequent decisions...." Pueblo's Objections, p. 11 (citing to the Court's prior Opinions entered on June 10, 1983 **[Docket No. 728]** and on April 14, 2000 **[Docket No. 5596]**); United States' Response to Objection, pp. 6-7. Throughout the course of this litigation, the parties have expended considerable energy debating the application of "law of the case" doctrine to this matter. In discussing the law of the case doctrine, the United States Supreme Court has stated that: ."..when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983). This rule promotes finality and efficiency of the judicial process by "protecting against the agitation of settled issues." *Id.* (quoting 1B J. Moore, J. Lucas, & T. Currier. Moore's Federal Practice ("Moore's"), ¶0.404[1], p.

15

118 (1984). The doctrine applies to the decisions of an appellate court as well as to a trial court's own decisions. *Id.*

In addition, however, courts often use the term as a convenient way of invoking policies underlying Rule 54(b) that balance the necessary power of a trial court to reopen issues previously decided and the equally necessary reluctance of a trial court to reopen them. 11A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Section ("Wright and Miller"), ¶ 4478.1 (2d ed. 2002). Under this use of the term, previous decisions do not necessarily constrain a court from revisiting issues still before it. Indeed, in the course of this adjudication, the Court has reopened criteria for determining the Pueblos' federal water rights, but only after careful consideration. *See e.g.,* Memorandum Opinion and Order ("April 2000 Opinion"), p. 2 entered on April 28, 2000 **[Docket No. 5596]**. Whether the Court elects to do so again remains to be seen; but if it does, the matter will not be undertaken lightly. Moreover, as the case progresses, it will be done with increasing reluctance.

16

The Pueblo also objects to Proposed Finding 8 and its subparts[9] on the grounds that the measure is speculative because (a) there has been no final adjudication or quantification of Pueblo rights; (b) the measure is based on interim or interlocutory rulings which may change; and (c) on appeal, the measure may change. Pueblo's Objections, pp. 9-12. This Court recognizes that the recommended measure set forth in Proposed Finding 8 is to some degree speculative for the reasons set forth by the Pueblo. However, this Court further recognizes that the water rights *already*

---

[9] In addition, the Pueblo objects to the Magistrate Judge's use of oral argument in support of Proposed Findings 8, 8a-8c, 8f, and 8g. As with other proposed findings, the Magistrate Judge supported these Proposed Findings with citations to testimony or evidence as well as to oral argument. Proposed Finding 8 sets forth the diversion and depletion amounts to which the Pueblo is entitled. It is supported by the Orders of the Court and submissions of the Special Master. Findings of Fact and Conclusions of Law, entered April 28, 1987 **[Docket No. 3035]**, as amended by Amended Findings of Fact and Conclusions of Law, entered September 9, 1987 ("Amended Findings") **[Docket No. 3074]**; the Court's Order, entered October 30, 1992 **[Docket No. 4052]** (adopting the March 12, 1991 Special Master's Report Concerning Pueblos' Irrigation Water Requirements, filed March 12, 1991 **[Docket No. 3701]** which identifies the appropriate farm delivery requirement to be used in determining an irrigation water right); the July 31, 2000 Pueblos' and United States' Memorandum, filed July 31, 2000 ("July 2000 Memorandum") **[Docket No. 5617]** (setting forth the Pueblos' replacement rights under the April 2000 Opinion pursuant to the Special Master's Order, entered May 19, 2000 **[Docket No. 5602]**). Since there is sufficient evidence to support of these proposed findings, the objections to the citation to oral argument are overruled.

The Pueblo also objects to the use of oral argument to support certain subparts of Proposed Finding 8. These objections are without merit. Proposed Finding 8a and 8b address the extensive trials, reports and opinions affecting the Pueblo's *aboriginal* irrigation water rights and the extent of the Court's consideration of the effect of Spanish and Mexican Law upon the Pueblo's rights. Having thoroughly reviewed the record of this case, this Court finds that the Proposed Findings accurately reflect the evidence and proceedings of the case. Proposed Finding 8c comes directly from the Court's Amended Findings, p. 3. Proposed Finding 8f is derived from a replacement irrigation right diversion figure offered by the United States and Pueblos in their July 2000 Memorandum which recalculated their replacement rights under the Court's April 2000 Opinion on replacement rights. Since there is sufficient evidence to support these proposed findings, the objections to the citation to oral argument are overruled.

Proposed Finding 8i and 8j also contain citation to oral argument for support, however, no party objected. In Proposed Finding 8i, the Magistrate Judge recognizes that the Court's rulings on the Pueblo's domestic and livestock rights are incomplete. Review of the docket reveals that the Court's the last action taken on this segment of the case was the entry of its January 2001 Opinion on related threshold legal issues. Clearly, additional action must be taken on the Pueblos' domestic and livestock claims. Proposed Finding 8j states the quantity water rights to which the Pueblo is entitled in the aboriginal domestic category. A review of prior Opinions relating to this matter and the evidence supports this finding. Tr. at pp. 41-2, 70-79; State's Exhibit 3 at pp. 14-15; State's Exhibit 4 at pp. 1-4; *see generally* Court's January 2001 Opinion.

Proposed Finding 8g relates to the Pueblo's replacement rights farm diversion amount. It does not rely upon oral argument for support. Therefore, the objection is overruled.

17

*recognized* by the Magistrate Judge in Proposed Finding 8 are unlikely to change by any significant amount.

This Court excepts Proposed Finding 8k from this recognition. Proposed Finding 8k states that "[b]ased on the law of the case, the domestic and livestock right is not likely to be determined as substantially larger than it already has been." As discussed in Proposed Finding 11- Substantial Likelihood of Success on the Merits, *infra* at p.19, the Pueblo has outstanding claims for its replacement domestic and livestock right. Accordingly, this Court rejects the Magistrate Judge's Proposed Finding 8k. This Court otherwise overrules the Pueblo's and United States' objections to Proposed Finding 8 and its subparts.

### Proposed Finding 9 - State Water Rights

In Proposed Finding 9, the Magistrate Judge recognizes that the Court previously held that if the Pueblo's use of water exceeds its federal waters right, it may obtain additional water rights permitted under state law. The Pueblo objects on the grounds that all its water rights are based on and controlled by federal law. Pueblo Objections, p.13. The Pueblo's objections are unfounded. This Court has acknowledged that if a Pueblo's uses require water in excess of its federal entitlement, it may obtain additional water by turning to state water statutes. *See* Memorandum Opinion and Order, entered December 1, 1986, p. 2 [**Docket No. 2879**]. Since the Magistrate Judge correctly states the decision, this Court overrules the Pueblo's objections and adopts Proposed Finding 9.

### Proposed Finding 10 - Scope of the Pueblo's Rights

Proposed Finding 10 is unnecessary to decide the issues presently before the Court, and is, therefore, rejected.

18

## Proposed Finding 11 – Substantial Likelihood of Success on the Merits

To meet its burden under Fed.R.Civ.Proc. 65(a), the State must show that (1) it has a substantial likelihood of success on the merits; (2) irreparable harm will occur unless the Court issues the injunction; (3) the threatened injury outweighs any harm an injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. Fed. R. Civ. Proc. 65; *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001) (citing *Utah Licensed Beverage Assn. v. Leavitt*, 256 F.3d 1061, 1065-1066 (10th Cir. 2001)). A preliminary injunction is an extraordinary remedy and therefore the right to relief must be clear and unequivocal. *Id.* (citing *Kikumura v. Hurley*, 242 F. 3d. 950, 955 (10th Cir. 2001).)

In his Proposed Finding 11, the Magistrate Judge concludes that the State has shown a "substantial likelihood of success on the merits." The Pueblo and the United States object. *See* Pueblo's Response to Objection, *infra*; United States' Response, p. 7. In support of their objections to the State's Motion and the Proposed Findings, the United States and the Pueblo bring to this Court's attention two claims that appear to have been overlooked. United States' Response, pp. 8-9; Pueblo's Response, p. 16. The Pueblo and the United States assert that, should the Pueblo prevail on these claims, it will have sufficient federal water rights to cover its projected uses. These outstanding claims, thus, bear directly on the issue of whether the State can prevail on the merits.

The first claim arises under the 1924 Pueblo Lands Act, 43 Stat. 636 ("1924 Act") and the 1933 Pueblo Compensation Act, 48 Stat. 108 ("1933 Act"). In 1924, Congress recognized that encroachment on Pueblo lands by non-Indians had occurred and that the Pueblos had lost considerable, valuable agricultural lands. Pursuant to Section 19 of the 1924 Act, the Secretary of the Interior may expend monies "for the purpose of the purchase of lands and water rights to replace

19

those which have been lost to said pueblo or to said Indians, or for the purchase or construction of reservoirs, irrigation works or the making of other permanent improvement upon or for the benefit of lands held by said pueblo or said Indians." *Id.* The Court has previously recognized that the four Pueblos have claims for replacement rights. *See* Memorandum Opinion and Order entered on April 14, 2000, p. 10 **[Docket No. 5596]**; Memorandum Opinion and Order ("May 1989 Opinion"), entered on May 3, 1989, p. 2 **[Docket No. 3283]**; Memorandum Opinion and Order entered on May 1, 1987 **[Docket No. 3038]**; Memorandum Opinion and Order ("February 1987 Opinion"), entered on February 26,1987, pp. 1-2, 4 **[Docket No. 2977]**.

Potential claims for replacement domestic and livestock rights were first formally identified in the Special Master's Pre-Hearing Order on Pueblos' Claimed Replacement Water Rights ("July 1991 Pre-Hearing Order"), filed July 12, 1991 **[Docket No. 3775]**. All four Pueblos have claimed entitlement to these rights. Motion for Deferral of Certain Items to the Domestic and Livestock Segment of This Case ("Pueblos' Motion for Deferral"), filed August 13, 1991, p. 3 **[Docket No. 3808]**. The Pueblo's claims for replacement domestic and livestock rights are found in the United States and Pueblos' Tentative Requested Findings of Fact and Conclusions of Law on Domestic and Livestock Water Rights ("August 1990 Requested Findings"), filed August 3, 1990, pp. 7-9 **[Docket No. 3515]**, which states as follows:

18.    Diversions for Pojoaque Pueblo's existing community system include domestic water to serve tribal enterprises constructed as permanent improvements, consisting of a retail business area and a residential trailer park. These improvements were funded in part by compensation to Pojoaque Pueblo for losses sustained under [the 1924 Act]... Section 19 of the [1924 Act] and Section 1 of the [1933 Act] ... authorized the use of compensation funds for the construction or acquisition of permanent improvements, as well as of lands and water rights or irrigation works, to replace losses sustained under the 1924 Act.

20

19.    During the time when the other Pueblos concentrated on agricultural development, most of Pojoaque Pueblo's funds were tied up in an investment made by the Bureau of Indian Affairs and did not become available until 1957.... Government policy shortly thereafter began giving priority to the development of tribal enterprises like those at Pojoaque, instead of to agricultural development.... Pojoaque Pueblo's replacement water rights under the 1924 and 1933 Acts were in major part developed to serve its permanent improvements rather than irrigation works.

20.    Based upon the capacity of wells developed to serve Pojoaque Pueblo's permanent improvements, that Pueblo's domestic water rights, which also qualify as replacement rights, are quantified at 1,014.5 acre feet per annum, with [a] depletion at 720.3 acre feet.

*Id.; see also* United States' Response, pp. 11-12; Pueblo's Response, p.16; Pueblo's Response to Defendants, p. 9. In the section entitled "Contested Issues of Fact" of the July 1991 Pre-Hearing Order, the Special Master stated in pertinent part: "[i]f the Pueblos have replacement water rights for non-agricultural works, then the quantity of water will be determined in the segment on the Pueblos' claims for domestic and livestock rights." *Id.* at p. 24, ¶7. The Special Master went on to set a deadline of August 15, 1991, for the submission of a list of replacement water works and set the matter for trial on October 1, 1991. *Id.* at pp. 26, ¶5, 31. Instead of submitting lists of replacement water works, the Pueblos filed their motion for deferral. Pueblos' Motion for Deferral, p. 3. Only the State filed a response to the Pueblos' Motion for Deferral. New Mexico's Response to Pueblos' Motion for Deferral ("State's Response to Motion for Deferral"), filed August 15, 1991 **[Docket No. 3819]**. It concurred with the motion, subject to the following conditions: "(1) that the term "constructed improvements" refers to "other permanent improvements", i.e., non-agricultural improvements constructed for or by the Pueblos with compensation funds and (2) that all such improvements, which were constructed or used, in part, for irrigation purposes are identified by the Pueblos by August 15, 1991." *Id.* at p.1.

The United States asserts, and a review of the record confirms, that this motion was never acted upon by the Special Master or the Court. United States' Response, pp. 8-9. Even so, the Special Master and the parties have taken actions as though the deferral were in effect. See, e.g., Special Master's Report Submitting Recommendations Concerning Disposition of Preliminary Threshold Legal Issues - Pueblos' Domestic and Livestock Rights, filed on September 3, 1996 **[Docket No. 5100]** (report discusses issues regarding replacement irrigation water works, but not replacement non-irrigation works or permanent improvements); January 2001 Opinion, pp. 2, 6 (Pueblos' may make claims for domestic and livestock water rights under the law of replacement or reserved rights). In light of the above, and having the matter brought to its attention, this Court finds that the Pueblos' Motion for Deferral is well-taken and will be granted.

The Pueblo's second claim to federal water rights yet to be determined relates to non-replacement acquired lands identified and separated from replacement rights by the Court in its May 1989 Opinion. In separating these rights, the Court recognized that the Pueblos could acquire lands and attendant water rights outside of the 1924 Act. Id. The Pueblo asserts that it has claims to this type of water right related to about 166 acres which have not yet been brought to the Court's attention. Pueblo's Response to Defendant's Objections, p. 9. The Special Master deferred this segment of the proceedings until after completion of the replacement segment. Status Report and Scheduling Order, entered on December 6, 1989 **[Docket No. 3318]**; see also April 2000 Opinion, p. 10; 1991 Pre-Hearing Order, p. 24. Since the replacement rights segment has yet to be completed, these claims have not come under consideration.

The Pueblo thus has outstanding claims for additional water rights in excess of 1,045 a/f/a. Thus far in the case, an entitlement to divert 363.94 a/f/a and to deplete 201.07 a/f/a has been

identified for the Pueblo. Proposed Finding 8. The projected amount of water to be used by the Pueblo upon completion of its projects amounts to a projected diversion of 713.8 a/f/a and a projected depletion of 577.94 a/f/a. Proposed Finding 6. The difference between the current and projected figures equals a diversion of 349.86 a/f/a and a depletion of 376.87 a/f/a. Even if the Pueblo is able to establish only half of its replacement domestic and livestock claim, or a diversion of 522.5 a/f/a, it would still have a total diversion right of approximately 886 a/f/a, an amount that is more than sufficient to cover the State's estimate of 713.8 a/f/a. Proposed Finding 6. Courts have variously interpreted the burden of establishing a "substantial likelihood of success" from a "reasonable probability of success." Wright & Milller, ¶ 2948.3, to a heavy and compelling showing of success. *See, Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1100 (10th Cir. 2003). Given the Pueblo's potential, yet-undetermined water rights, this Court concludes that the State's showing of success on the merits fails to meet even the lesser burden of "a reasonable probability of success" and rejects Proposed Finding 11. *See also* Proposed Finding 15, *infra* at p. 27.

### Proposed Findings 12[10] and 13 - Irreparable Harm

A Court may still issue a preliminary injunction in the face of a weak showing of probability of success on the merits if a movant can demonstrate a strong probability of irreparable injury if the Court does not act. 11A Wright & Miller, ¶ 2948.3. An important prerequisite for the issuance of a preliminary injunction is a "demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Id.* at ¶ 2948.1, pp. 139-149.

---

[10] The Magistrate Judge supported Proposed Finding 12 with oral argument. Based on following discussion, however, this Court finds that the finding is well supported in the evidence.

The State objects to the Magistrate Judge's Proposed Finding 12 which rejects the State's argument that it need not show irreparable injury, because it relies on a statute in bringing its Motion. State's Memorandum, pp. 12-14 (citing N.M.S.A. 1978, Section72-12-15 (1997 Supp.); State's Objections, p. 12. The State contends that "when a statute contains, either explicitly or implicitly, a finding that a violation will harm the public, the courts may grant preliminary equitable relief on a showing of a statutory violation without requiring any additional showing of irreparable harm." State's Objections, p. 12 (citations omitted). A review of the cases cited by the State in support of this proposition reveals that the State's reliance on them is misplaced. Most of the cases involve statutes in which Congress specifically provides for the issuance of a preliminary injunction. In each instance, courts set aside the burden of proving irreparable harm because Congress either specified a lesser burden or made some other provision which was interpreted as negating the necessity of a full showing of irreparable harm. *See, Mical Communications, Inc. v. Sprint Telemedia, Inc.*, 1 F.3d 1031, 1035-6 (10th Cir. 1993) (1934 Communications Act provides court may issue *writ of mandamus* upon a showing of violation of the statute; no showing of irreparable harm necessary); *Resolution Trust Corp. v. Cruces*, 972 F.2d 1195, 1199 (10th Cir. 1992) (1990 Comprehensive Thrift and Bank Fraud Prosecution and Taxpayer Recovery Act specifically sets aside irreparable harm requirement for issuance of preliminary injunction); *Atchison, T. and S. F. Ry. v. Lennen*, 640 F.2d 255, 259 (10th Cir. 1981) (1978 Revised Interstate Commerce Act expressly authorizes courts to issue injunctions "to prevent, restrain or terminate violations;" showing of irreparable harm is not necessary); *U. S. v. Odessa Union Warehouse Co-op.*, 833 F.2d 172, 175-6 (9th Cir. 1987) (Federal Food, Drug, and Cosmetic Act authorizes issuance of a preliminary injunction in order to enforce and implement Congressional policy, decision-making of court differs

24

from that of court considering claims of two private litigants); *Shadid v. Fleming*, 160 F.2d 752 (10th Cir. 1947) (citing *Henderson v. Burd*, 133 F.2d 515 (2nd Cir. 1943)) (1942 Emergency Price Control Act authorizes issuance of injunction where there has been or there is about to be a violation, irreparable harm need not be shown, it is enough that the statute's requirements are met).[11]

Here, the statute relied upon by the State contains no language either dispensing with or lessening the requirement of showing irreparable harm. N.M.S.A. 1978, 72-12-15 (1997 Supp.); *see also Weinberger v. Romero-Barcelo*, 456 US 305, 311-3 (1982) (basis for injunctive relief in the federal courts has always been irreparable injury; federal judge is not "mechanically obligated to grant an injunction for every violation of the law"). The State's reliance on *State ex rel. Reynolds v. Mears*, 525 P.2d 870 (N.M. 1974) is also misplaced. In *Mears*, the New Mexico Supreme Court granted declaratory relief and did not reach the petition for injunctive relief or by extension, any requirement by the State to establish irreparable harm.

This Court rejects the State's argument that it need not show irreparable injury because it relies on a statute in bringing its Motion. This Court therefore overrules the objection and adopts the Magistrate Judge's Proposed Finding 12.

The State also objects to the Magistrate Judge's Proposed Finding 13 which determines that the State has not met its burden of showing irreparable harm. Proposed Findings. pp 35. The State contends that in the event that it must make a showing of irreparable harm, it has done so in a manner sufficient to meet the requirements for issuance of a preliminary injunction. State's

---

[11] The remainder of the State's cases in support of its contention come from federal district courts and from the Arizona state court. While these rulings may be interesting or somewhat instructive, they are not binding federal appellate law and this Court fails to find them determinative   .
in resolving the instant action.

Objection, p. 14.  In support of this citation, the State relies on the testimony of State Engineer

Turney. Tr. at pp. 20-32.  The State Engineer testified in part as follows:

> Q.   Why were you concerned with the prospect of increased uses of water by
>       Pojoaque Pueblo? . . .
> A.   I believed I was seeing an illegal of use of water of the pueblo.
> Q.   And what does that have to do with your job?
> A.   My job is to administer the waters of the state.  The state has a finite water
>       resource.  Not everybody can have all the water they want. . . .  The Rio
>       Grande is basically fully appropriated.  And there are (sic) simply no new
>       water on the system. . . .
> Q.   [Will] additional depletions... result in less water flowing in the Rio Grande?
> A.   I believe that is what will ultimately happen.
> Q.   And what's the consequence of that?
> A.   The consequences are -- are many.  It begins to impact other water right
>       holders in the basin.  It also begins to have an impact on your compacts.  As
>       an example, if you ultimately have less flow coming in the Rio Grande, less
>       flow passing the Otowi Index, that in turn means that less water is owed
>       underneath the Rio Grande compact, in what we call the Elephant Butte
>       Index, which ultimately impacts the City of Las Cruces and its environs.
>       They would have less water.  So the impacts are felt up and down the entire
>       stream system.
> Q.   [Y]ou told the Court that the Rio Grande is fully appropriated, and it has been
>       since at least 1907...
> A.   That is a possibility...
> Q.   [A]re you claiming that the existing uses of the Pueblo of Pojoaque today are
>       impacting a specific other right that you're attempting to protect, namely, the
>       right of another water user to date?
> A.   Not to date, but in the future that will be an impact.

*Id.*  This Court finds the testimony too vague to establish any present harm resulting from the

Pueblo's diversions.  Therefore, this Court overrules the State's objections and adopts Proposed

Finding 13, 13a,[12] and 13b.

---

[12]  Proposed Finding 13a states that "[t]here is insufficient proof that the existing uses of the Pueblo
are today affecting any existing water right owned by or protected by the State of New Mexico." Proposed
Findings, p. 35.  This Proposed Finding was supported by citation to oral argument. It is, however, a
conclusion derived from the consideration of the State's evidence of and argument regarding irreparable harm.
No harm arises from the use of the citation.

**Proposed Finding 14 - Other Elements of a Preliminary Injunction**

Having found that the State has failed to meet either of the first two elements required to obtain a preliminary injunction, this Court agrees with the Magistrate Judge that it need not reach the other two elements. Proposed Finding 14 therefore is adopted.

**Proposed Finding 15, 15a and 15 b - Other Findings**

This Court's adoption of Proposed Finding 15 has already been addressed in its discussion of Proposed Finding 11, *infra* at p. 19. This Court's review of the record verifies the correctness of Proposed Findings 15a and 15b. Therefore, this Court adopts these Proposed Findings.

IT IS THEREFORE ORDERED that the Magistrate Judge's recommendation that the Stay was not violated is ADOPTED and the Pueblo's objection that the State's motion for a preliminary injunction violates the August 2000 Order to Stay is REJECTED.

IT IS FURTHER ORDERED that the Magistrate Judge's recommendation regarding the Pueblo's motion to dismiss is ADOPTED and the motion is DENIED, with prejudice.

IT IS FURTHER ORDERED that the Magistrate Judge's Proposed Findings are ADOPTED, MODIFIED or REJECTED as set forth above and the State's motion for preliminary injunction is DENIED without prejudice.

IT IS FURTHER ORDERED that the Magistrate Judge's recitation of the history of this case is AMENDED to reflect that permits for state law wells were not required in this basin prior to November 29, 1956.

27

IT IS FURTHER ORDERED that the Pueblos' August 13, 1991 Motion for Deferral is hereby

GRANTED.

_____

UNITED STATES DISTRICT JUDGE