## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO *ex rel.*
State Engineer,
        Plaintiff,
    v.                                    No. Civ. 66-06639 MV/LCS

R. LEE AAMODT *et al.*,
        Defendants,
    and

UNITED STATES OF AMERICA,
PUEBLO DE NAMBÉ,
PUEBLO DE POJOAQUE,
PUEBLO DE SAN ILDEFONSO,
and PUEBLO DE TESUQUE,
        Plaintiffs-in-Intervention.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion of Settlement Parties to Establish Procedures for (1) Approval of Settlement Agreement, (2) Entry of a Partial Final Decree, (3) Entry of Interim Administrative Order, and (4) Entry of a Final Decree.  (Doc. No. 6185, filed November 1, 2006) ("Motion").  For the reasons given below, the Court will **GRANT** the Motion subject to the instructions given in this Order.  Before giving those instructions, the Court will briefly discuss the two responses to the Motion.

### THE UNITED STATES' RESPONSE

The United States' does not oppose the Settlement Parties' Motion.  Its four-sentence Response raises the following points:

> The United States takes no position on the Settlement Parties [sic] motion . . . .
> [which] appears to offer a sound mechanism to address procedural issues . . . .  [T]he
> United States does not support the current proposed settlement agreement, and the
> agreement will likely require significant substantive changes before the United

States' concerns are addressed.  Changes to the settlement agreement may in turn require the parties to revisit and amend the [proposed] procedures . . . .

(United States' Response, Doc. No. 6199, filed December 19, 2006).

The United States does not identify how changes to the settlement agreement may require the parties to amend the proposed procedures.  Should any changes require such amendments, any party may file a motion to amend the procedural order.

## MR. PAUL WHITE'S RESPONSE

Mr. White, a *pro se* defendant, raises seven arguments in opposition to the Settlement Parties' Motion.  (*See* Paul White's Response, Doc. No. 6195, filed December 14, 2006, "Response").

### Standing to Assert that the Settlement is Contrary to Public Welfare

Mr. White argues that applicable law does not require that objectors must demonstrate a legally cognizable injury to argue that adoption of the settlement agreement is not fair, adequate, reasonable, in the public interest or consistent with applicable law.  (Response at 1).  Mr. White does not identify the "applicable law" that he contends does not require a showing of a legally cognizable injury.

The Court will require that any person objecting to the settlement agreement must state in their objection how the objector will be injured or harmed by the settlement agreement in a legally cognizable way.  Non-settling defendants, in general, lack standing to object to a partial settlement. *In re Integra Resources v. Fidelity Capital Appreciation Fund*, 262 F.3d 1089, 1102 (10th Cir. 2001) (*citing* 5th, 9th and D.C. Circuit cases); *Waller v. Financial Corp. of America*, 828, F.2d 579, 582-583 (9th Cir. 1987) (*citing* 1st, 5th and 7th Circuit cases).  Courts have, however, recognized a limited exception to this rule where non-settling parties can demonstrate they are prejudiced by a

settlement.  *Id.*  "This standard strikes a balance between the desire to promote settlements and the interests of justice."  *Waller v. Financial Corp. of America*, 828, F.2d at 583.  "'Prejudice' means 'plain legal prejudice,' as when 'the settlement strips the party of a legal claim or cause of action.'"  *In re Integra Resources v. Fidelity Capital Appreciation Fund*, 262 F.3d at 1102 (it is not sufficient to show merely the loss of some practical or strategic advantage in litigating the case).

Requiring objectors to describe how they will be injured or harmed by the settlement agreement in a legally cognizable way is also consistent with New Mexico water law.  Any person objecting that the granting of a surface or groundwater permit application will be contrary to the conservation of water within the state or detrimental to the public welfare of the state must show "that the objector will be substantially and specifically affected by the granting of the application" to have standing to file an objection.  N.M. Stat. Ann. §§ 72-5-5.B. and 72-12-3.D.

**Substantive Issues Decided by District Judge**

Mr. White states "Substantive decisions should be left to the Federal District Judge to determine, not the Magistrate Judge as called for in the motion.  The Magistrate Judge should not rule on the validity of objections and this provision is inappropriate."  (Response at 1).  Mr. White does not specify the provision to which he refers, but it appears that he is referring to the "Objections" provision on page 4 of the proposed order which states "The objection process shall be conducted by the presiding Magistrate Judge" and the final sentence on page 5 of the proposed order which states "The presiding Magistrate Judge shall conduct all proceedings necessary and related to the objection process."

Federal law permits a district judge to designate a magistrate judge to hear and determine any pretrial matter pending before the court, with certain exceptions, to conduct hearings, including evidentiary hearings, and to submit to the district judge proposed findings of fact and

recommendations for disposition.  28 U.S.C. §§ 636(b)(1).  The district judge may also assign to a magistrate judge such additional duties as are not inconsistent with the Constitution and laws of the United States.   28 U.S.C. §§ 636(b)(3).  The Honorable Martha Vázquez, Chief United States District Judge, has referred all matters in this case, as permitted by the provisions of 28 U.S.C. §§ 636(b)(1) and (b)(3), to the Honorable Leslie C. Smith, United States Magistrate Judge.  (Order of Reference, Doc. No. 6216, filed February 23, 2007).

The Magistrate Judge will conduct all proceedings necessary and related to the objection process and submit his proposed findings and recommended disposition to the District Judge. Within ten days after being served with the Magistrate Judge's proposed findings and recommendations, any party may serve and file written objections to such proposed findings and recommendations.  28 U.S.C. §§ 636(b)(1).  The District Judge will then make a *de novo determination* of those specified proposed findings and recommendations to which objection is made.  *Id.* (*emphasis added*) (a district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge, or recommit the matter to the magistrate judge with instructions).  The Federal Magistrates Act, 28 U.S.C. §§ 636(b)(1), calls only for a *de novo* determination of objections to the Magistrate Judge's report by the District Judge; it does not require that the District Judge conduct a *de novo* hearing.  *United States v. Raddatz*, 447 U.S. 667, 673-676 ((1980).  In addition, the Federal Magistrates Act does not require that the District Judge review the Magistrate Judge's report when no objections are filed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

**Effect of Proposed Inter Se Procedure on Non-Settlement Parties**

4

Mr. White states that it "is not proper for the court to bind non-settlement parties to an *inter se* procedure dictated by the settlement parties." (Response at 1-2). He also states that the "*inter se* procedure is prejudicial to some parties and this process affects the rights of non-settlement parties." (Response at 2). Mr. White does not identify how the *inter se* procedure is prejudicial to some parties or how it affects the rights of some parties.

The purpose of the Motion currently before the Court is to establish procedures (1) to provide notice to all parties that the Court will decide whether to approve the settlement agreement, and (2) to give all parties the opportunity to present their objections to the Court before it decides whether to approve the settlement agreement. The Motion currently before the Court does not establish *inter se* procedures. Accordingly, Mr. White's comments regarding the *inter se* procedure will not be addressed at this time. Mr. White and any other party may raise their arguments regarding the proposed *inter se* procedure during the objection process.

Finally, the *inter se* procedure will not, contrary to Mr. White's assertion, be "dictated by the settlement parties." (Response at 2). The settlement agreement merely proposes an *inter se* procedure upon which the Settlement Parties agreed. Those opposing the *inter se* procedure proposed by the Settlement Parties will have the opportunity to present their objections to the Court. The Court, not the Settlement Parties, will determine the *inter se* procedure for this case.

**Burden of Proof**

Mr. White argues that the Settlement Parties' Motion improperly shifts the burden of showing the settlement is not fair, adequate or reasonable, onto the objecting parties. (Resp. at 2-3). Mr. White cites three cases for the proposition that "[p]roponents of *class action* settlements bear the burden of developing a record demonstrating that the settlement distribution is fair, reasonable and adequate." *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983) (*emphasis*

*added*).  The cases Mr. White cites are class action suits.  Class action suits have the ability to bind people who are not individual litigants and thus create potential risks of prejudice and unfairness for absent class members.  FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION § 21, p. 243 (4th ed. 2004).  This imposes unique responsibilities on the court and counsel.  *Id*. at 243-244.  Placing the burden of proof on proponents of class action settlements helps the court protect the interests of absent class members.

The Settlement Parties argue that "where settlement has been reached based on arms length negotiations, where those negotiations have been lengthy, extensive, and contested, and under the general supervision of the Court, the burden is on the objector to demonstrate why the settlement is not fair, adequate or reasonable."  *See United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) (citing cases from 6th and 7th Circuits) ("once the court is satisfied that the decree was the product of good faith, arms-length negotiations, a negotiated decree is presumptively valid and the objecting party 'has a heavy burden of demonstrating that the decree is unreasonable.'").  The numerous oral and written status reports from the Settlement Parties over the past several years support the Settlement Parties' contention that the settlement agreement is the product of good faith, arms-length negotiations.

The burden will be on the objectors to prove that the settlement is not fair, adequate or reasonable.  *See Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) (trial court must approve a settlement if it is fair, reasonable and adequate; listing factors the trial court should consider).  Those parties objecting to the settlement agreement will have an opportunity to present their objections to the Court, including any arguments that the agreement is not the product of good faith, arms-length negotiations.  *See Miller v. Woodmoor Corp.*, 619 F.2d 65,67 (10th Cir. 1980) (rejecting objectors' complaint that the court shifted the burden of proof to them where the

settlement parties supported their conclusions to the satisfaction of the court and the objectors had every opportunity to show that the settlement was unfair to them and their class). Placing the burden of proof on the objectors implements the policy consideration of encouraging voluntary resolution of lawsuits and maintains consistency with Fed. R. Civ. P. 41(a)(2) which governs voluntary dismissals of lawsuits. *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1233 (7th Cir. 1983). A district court should grant a motion for voluntary dismissal unless a defendant can show that it will suffer some legal prejudice as a result. *Brown v. Baeke*, 413 F.3d 1121, 1123 (10th Cir. 2005); *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1233 (7th Cir. 1983) ("It would indeed be incongruous for a non-settling defendant to have any less of a burden in attempting to prevent a [partial settlement] than he would if he were the party being dismissed.").

**Motion is Not Premature**

Mr. White asserts that the Motion is premature because: (1) "Subsequent issues have not been resolved . . . Previous language in the settlement which has been signed by the settling parties is being revised," and (2) "The United States DOJ and DOI has [sic] not signed onto the settlement and in fact have said they would oppose the settlement." (Response at 3).

The Motion is not premature. This case has been pending since 1966. There is no reason for the Court to delay ruling on the Motion. The Court, and the attorneys as officers of the Court, have an affirmative duty to ensure that this case is resolved not only fairly, but without undue cost or delay. FED. R. CIV. P. 1, advisory committee notes (1993 Amendments). Consequently, there is reason for the settlement approval procedure to be in place before the Settlement Parties present the settlement agreement to the Court for approval. While Mr. White's arguments may be relevant to approval of the settlement agreement, they are not relevant to the timeliness of establishing the approval procedure.

**Lack of Full Participation**

Mr. White argues that the "DOJ has not faithfully applied the 'Policy of Federal Participation in Indian Water Rights Negotiations,' which states, 'negotiations should be conducive to long-term harmony and cooperation among all interested parties.'" (Response at 3). He also asserts that the negotiations were conducted in secrecy, special interest parties have been given precedence over the policy's intent, prior treaties have not been given due consideration, and the negotiations have been prejudiced by not allowing for the participation of additional interested parties. (*Id.*).

Mr. White's comments regarding the conduct of the negotiations are not relevant to the matter now before the Court which is to establish the procedure for approving the settlement agreement.

**Due Process**

Mr. White asserts that "the motion violates due process." (Response at 3). His two-sentence argument states: "Other previously notified defendants not represented by counsel have not received notice of the motion. Because this motion raises substantive issues notice must be given to all parties." (*Id.*). Mr. White does not identify the "substantive issues" nor does he cite any legal authority to support his argument that the Motion violates due process.

The Settlement Parties' Motion does not violate due process because it does not deprive any person of their property rights. *See Mitchell v. City of Moore*, 218 F.3d 1190, 1198 (10th Cir. 2000) (Procedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision; substantive due process guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision). Their Motion asks the Court to establish the settlement agreement approval procedure and proposes a form of procedural order for the Court's

consideration.

The Court will adopt the procedure proposed by the Settlement Parties, with a few modifications, because it will prevent undue delay in the resolution of this case while at the same time providing for a just determination for all parties. *See Link v. Wabash Railroad Co.*, 370 U.S. 626, 630-631 (1962) (district court has inherent power to manage its own affairs so as to achieve the orderly and expeditious disposition of cases). The modified procedure will identify and serve all persons entitled to notice, so far as they can be ascertained with reasonable diligence, serve notice on unknown claimants by publication, and afford all claimants the opportunity to be heard by the Court before it approves the settlement agreement. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections).

**Other Matters**

The Court wishes to address a number of statements in Mr. White's response which reflect an incomplete understanding of the settlement process that may be shared by other *pro se* parties.

Mr. White states that the "negotiations have been conducted with preferential treatment being shown to the Pueblo attorneys by the mediation judge." (Response at 2). Having closely supervised the status of the settlement negotiations over past seven years, the Court has the utmost confidence that the Honorable Michael C. Nelson has been a neutral mediator. Judge Nelson's duty as a mediator is to help the disputing parties reach an agreement. He has no power to impose a decision on the parties.

Mr. White also states that the settlement negotiations "have been a lopsided process which

has not been inclusive," that the "attorney [for certain protestors] has never been officially admitted to the negotiations and many concerns presented have only been given cursory attention," and that the negotiations "have been biased and prejudiced by not allowing for the participation of additional interested parties." (Response at 2-3). In litigation involving numerous parties, litigants sometimes seek a settlement with less than all of the parties. FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION 174 (4th ed. 2004). In this adjudication, where there are hundreds of claimants, it is extremely unlikely that settlement negotiations involving every party in this case would resolve successfully in a reasonable period of time. There is nothing impermissible or improper about the Settlement Parties attempting to settle their disputes among themselves and allowing other parties to join in the settlement later. Those claimants objecting to the settlement will not be forced to join the settlement but instead will be permitted to adjudicate their water rights via litigation. *See Kothe v. Smith*, 771 F.2d 667, 669 (2nd Cir. 1985) (court cannot coerce a party to settle). Furthermore, as discussed elsewhere in this Order, those who believe that the settlement agreement will cause them harm will have the opportunity to present their objections to the Court.

Mr. White states that "there has been little adherence to 'arms length' treatment" during the settlement negotiations. (Response at 2). Based upon the previous proceedings in this adjudication, the nature of the water rights claims of the various parties, the identity of the parties involved with the settlement, and the numerous settlement negotiation status reports, the Court concludes that the negotiations were conducted at "arms length," meaning that the negotiations were conducted by unrelated parties, each acting in their own self interest.

Finally, Mr. White commented that the negotiations were "conducted in secrecy." (Response at 3). The negotiations were closed to the public because the Court ordered that all oral and written statements made in the course of discussions with the mediator be kept confidential. (Order, Doc.

No. 5629, filed September 15, 2000).  The purpose of the confidentiality rule is to encourage the parties to be candid with the mediator by making them comfortable that their positions, willingness to settle, weaknesses of their case, etc. will not prematurely influence the trial judge.  Both the United States Congress and the Court of Appeals for the Tenth Circuit, in which this Court sits, recognize that the guarantee of confidentiality is essential to the proper functioning of a settlement program.  *See* Alternative Dispute Resolution Act, 28 U.S.C. § 652(d) (each district court shall, by local rule, provide for the confidentiality of the mediation process and prohibit disclosure of confidential mediation communications); *Clark v. Stapleton Corp.*, 957 F.2d 745, 746 (10th Cir. 1992) (for settlement program to be successful, participants must trust that matters discussed at a settlement conference will not be revealed to the judge).  While the settlement negotiations were confidential, the settlement agreement has been public for some time.  (Reply n. 6, at 6)  Any confidential communications made during the negotiations are, therefore, irrelevant both for the task currently before the Court, which is to determine the settlement agreement approval procedure, and later, if and when the Settlement Parties submit the agreement for Court approval.[1]

## INSTRUCTIONS TO MOVANTS

Movants shall comply with the following instructions:

The proposed procedural order, on page 2, states "the State shall provide the Court with an updated service list as to all known water rights claimants in the Pojoaque Basin for purposes of providing notice of the Settlement Agreement."  The Movants shall revise the proposed procedural order to include the following:  "The State shall submit a description of the procedure used to determine and update the service list.  The description shall demonstrate that the Settlement Parties

---

[1]The confidential communications are also inadmissible in Court pursuant to Rule 408 of the Federal Rules of Evidence which prohibits the use of statements made in settlement negotiations.

identified all persons entitled to notice, so far as they can be ascertained with reasonable diligence." *See Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

Page three of the proposed procedural order indicates that the State will mail the Court's order to show cause to all joined parties. Movants shall revise the proposed procedural order to require that the State mail the order to show cause in both English and Spanish. The exhibits attached to the order to show cause, the settlement agreement and the federal law approving the agreement, may be in English only.

Section 1. Notice of Settlement Party Status and Elections, on page 3 of the proposed procedural order, states "Any individual may become a Settlement Party at any time by filing a signed Settlement Agreement signature page with the Court, (to be provided with Order to Show Cause), and by filing a notice of election." Movants shall clarify this language to indicate that the notice of election is included on the signature page and that individuals wishing to become settlement parties must, therefore, file only one document.

Movants shall also check the second section number for the second election ("To keep well and reduce use pursuant to Sections 3.1.7.2.2 and **3.1.7.4.1**") on the notice of election and correct the section number if appropriate.

Movants shall also add language to Section 1 on page 3 of the proposed procedural order and to the proposed order to show cause instructing individuals that they may file their signature page/notice of election in person by taking the original and a copy to the Clerk's Office at one of the United States Courthouses which are located at 120 South Federal Place in Santa Fe, 333 Lomas

Blvd. NW, Suite 270, in Albuquerque, and 200 E. Griggs in Las Cruces.  They may also file their

signature page by mailing an original and one copy to:

> United States District Court
> 333 Lomas Blvd. NW, Suite 270
> Albuquerque, NM 87102

Those individuals that file their signature page by mail and request a stamped copy must provide

an additional copy and a pre-addressed, stamped envelope.

Section 1 on page 3 of the proposed procedural order also states "The Court will compile and

maintain a list of all Settlement Parties and any elections made pursuant to Section 3.1.7.2 of the

Settlement Agreement."  The Court docket will serve as the list of Settlement Parties and their

elections.

The proposed procedural order, on page 4, states that "The Court will issue a list of objectors

and their counsel within twenty (20) days after the deadline for Objections has closed. After the

issuance of the objector list the Court shall set a case management conference to address the

objection process."  The Court docket will serve as the list of objectors and their counsel.  Movants

shall revise the proposed order to include the following: "Within thirty (30) days after the deadline

for Objections has closed, the Settlement Parties shall file a motion with a proposed case

management order to address the objection process.  After the deadlines for filing responses and

replies expire, the Court will set a case management conference to address the objection process."

The last paragraph on page 5 of the proposed procedural order states:

> All other procedures set forth and requested in the Motion to Establish Procedures
> are approved and adopted by the Court as if fully set forth herein.  The presiding
> Magistrate Judge shall conduct all proceedings necessary and related to the objection
> proceedings necessary and related to the objection process.

"All other procedures" appears to refer a general discussion of entry of a partial final decree for the

Pueblo rights and entry of a final decree, activities which will occur after the objection proceedings. (*See* Motion at 9-11). To avoid confusion, the Court will not adopt "all other procedures" at this time. The Settlement Parties may, during or after the objection proceedings, file additional motions for any other procedures they deem necessary. The Court has described the role of the Magistrate Judge elsewhere in this order. Movants shall, therefore, remove the last paragraph on page 5 of the proposed procedural order.

Paragraph 1 on page 2 of the proposed order to show cause states "You are hereby ordered to show cause why this Court should not approve the Settlement Agreement . . . ." Movants shall add a statement indicating that claimants who do not object to the settlement agreement need not respond to the order to show cause.

Paragraph 3 on page 5 of the proposed order to show cause instructs those objecting to the settlement agreement that they "must also serve your objection on counsel for the following Settlement Parties: the State of New Mexico . . . and the City of Santa Fe." After an objection is filed with the Court, the Settlement Parties will be notified electronically. Movants shall remove the sentence instructing objectors to serve their objections on the Settlement Parties.

Movants shall remove paragraph 5 on page 3 of the proposed order to show cause which indicates the Court will prepare a list of objectors and participating parties. The Court docket will serve as the list.

Movants shall email and mail the revised proposed procedural order and the revised proposed order to show cause to the Honorable Leslie C. Smith, United States Magistrate Judge, at SmithChambers@nmcourt.fed.us and at United States District Court, 200 E. Griggs St., Las Cruces, NM 88001, respectively.

### INSTRUCTION TO ALL PARTIES

The Court has established a procedural framework which, among other things, gives all parties an opportunity to present their objections to the settlement agreement to the Court.  The Court reminds all parties that, when objecting to the settlement agreement, they have the responsibility of making his or her own arguments to the Court.  The Court cannot fully address arguments that are posed in vague, general terms, or without citation to some legal authority.  While it will not hold *pro se* pleadings to the more stringent standards for pleadings drafted by lawyers, the Court will not act as a party's attorney and make the party's arguments for them.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000); *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992).  Doing so would not only consume an inordinate amount of time, but would result in the Court abandoning its neutrality and becoming an advocate in the adversarial process.  *See Mitchell v. City of Moore*, 218 F.3d at 1199.

**IT IS SO ORDERED.**

_____
**MARTHA VÁZQUEZ**
**CHIEF UNITED STATES DISTRICT JUDGE**

Recommended for entry:

 **/s/ by Leslie C. Smith**
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**