**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

STATE OF NEW MEXICO *ex rel.*
State Engineer,
        Plaintiff,

    v.                                                                                     No. Civ. 66-6639 MV/WPL

R. LEE AAMODT *et al.*,
        Defendants,

    and

UNITED STATES OF AMERICA,
PUEBLO DE NAMBÉ,
PUEBLO DE POJOAQUE,
PUEBLO DE SAN ILDEFONSO,
and PUEBLO DE TESUQUE,
        Plaintiffs-in-Intervention.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on Defendant Elisa Trujillo's Motion to Quash Preliminary Injunction (Doc. No. 7403, filed June 16, 2011). For the reasons stated below, the Court will **DENY** Trujillo's Motion.

**Background**

      On February 26, 1982, the United States and the four Pueblos ("Plaintiffs-in-Intervention") filed a motion seeking an injunction barring the State from issuing any well permits under N.M. Stat. Ann. § 72-12-1 ("the Domestic Well Statute"). (*See* Doc. 576). The Domestic Well Statute sets forth the procedure for a person to obtain a permit to use groundwater for household use and the irrigation of up to one acre of noncommercial trees, lawn, or garden. *See* N.M. Stat. Ann. § 72-12-1. The Plaintiffs-in-Intervention argued that allowing additional withdrawals of groundwater would

injure the senior water rights holders in the basin, unless the permits were restricted to indoor use only, which would result in very small consumptive use compared to irrigation of one acre. (*See* Mem. In Support, Doc. No. 577, filed February 26, 1982). The State opposed the motion for an injunction arguing that the Plaintiffs-in-Intervention failed to prove that they will suffer irreparable injury because they did not show that they would not be able to divert water because of the possible new appropriations of water by domestic wells permitted during the pendency of this suit. (*See* State's Response and Mem. in Support, Doc. Nos. 579 and 580, filed March 11, 1982).

On January 13, 1983, the Court, after having heard oral argument, granted the motion for an injunction and ordered that:

> no permits to appropriate underground waters shall be issued within the Rio Pojoaque stream system under Section 72-12-1, N.M.S.A. 1978. Permits may issue limited to the use of water for household, drinking and sanitary purposes within a closed water system that returns effluent below the surface of the ground minimizing and [sic] consumptive use of water. All subject to further order of the court.

(Doc. No. 641) (Mechem, S.J.) ("1983 Order").

Two years later, on March 15, 1985, the State Engineer issued Trujillo's predecessor-in-interest a domestic well permit. (*See* Motion Ex. 2A, Doc. No. 7403-1, filed June 16, 2011). The State Engineer approved the permit subject to the following condition:

> Use shall be limited strictly to household and/or drinking and sanitary purposes; water shall be conveyed from the well to the place of use in closed conduit and the effluent returned to the underground so that it will not appear on the surface. No irrigation of lawns, gardens, trees or use in any type of pool or pond is authorized under this permit.

(Motion Ex. 2A and 2B, Doc. No. 7403-1 and -2, filed June 16, 2011).

Twenty-six years later, on June 16, 2011, Trujillo filed her motion, now before the Court, to vacate the 1983 Order.

**New Mexico Water Law**

The right to use water in New Mexico is based in large part on the priority doctrine which states "[p]riority of appropriation shall give the better right." N.M. Const. art. XVI, § 2. Generally, new appropriations of groundwater are governed by N.M. Stat. Ann. § 72-12-3 which requires a person desiring to appropriate groundwater to apply for a permit from the State Engineer. The State Engineer must issue a permit to appropriate groundwater if the State Engineer finds, among other things, that there are "unappropriated waters or that the proposed appropriation would not impair existing water rights." N.M. Stat. Ann. § 72-12-3(E).

The Domestic Well Statute, N.M. Stat. Ann. § 72-12-1, is one exception to the general rule that the State Engineer must find that senior water rights will not be impaired before issuing a permit for a new appropriation. The Legislature enacted the Domestic Well Statute "[b]y reason of the varying amounts and time such water is used and the relatively small amounts of water consumed in the watering of livestock, in irrigation of not to exceed one acre of noncommerical trees, lawn or garden; in household or other domestic use, and in prospecting, mining or construction of public works, highways and roads or drill operations designed to discover or develop the natural resources of the state of New Mexico." N.M. Stat. Ann. § 72-12-1. The Domestic Well Statute in effect when the Court entered its 1983 Order required that the State Engineer issue domestic well permits without prior evaluation of water availability or impairment of existing water rights:

> "[a]ny person . . . desiring to use any [underground water] . . . for irrigation of not to exceed one acre of noncommercial trees, lawn, or garden; or for household or other domestic use shall make application . . . to the state engineer . . . Upon the filing of each such application, describing the use applied for, the state engineer shall issue a permit to the applicant to so use the waters applied for."

N.M. Stat. Ann. § 72-12-1. "In 2003 the Legislature amended Section 72-12-1 and moved the provisions relating to domestic wells, livestock wells, and temporary uses of water from Section 72-

12-1 into newly created Sections 72-12-1.1, -1.2, and -1.3, respectively." *Bounds v. New Mexico*, 2011-NMCA-011, ¶ 18.

The New Mexico legislature has granted the State Engineer broad powers to implement and enforce the water laws administered by him. *See Lion's Gate Water v. D'Antonio*, 2009-NMSC-057, ¶ 24. Under New Mexico's water code, the "State engineer may adopt regulations and codes to implement and enforce any provision of law administered by him . . . . this provision is to be liberally construed." N.M. Stat. Ann. § 72-2-8(A). "Any regulation, code or order issued by the state engineer is presumed to be in proper implementation of the provisions of the water laws administered by him." N.M. Stat. Ann. § 72-2-8(H).

In 1966, the State Engineer issued "Rules and Regulations Governing Drilling of Wells and Appropriation and Use of Ground Water in New Mexico," SE-66-1, which were amended on January 6, 1983, one week before entry of the 1983 Order. Article 1-15.8 states that the "amount and uses of water permitted [under the Domestic Well Statute] are subject to such limitations as may be imposed by the courts." Amendment to SE-66-1, Art. 1-15.8. In August 2006, the State Engineer repealed SE-66-1 and promulgated new regulations regarding permits issued under the Domestic Well Statute. *See* N.M.A.C. § 19.27.5.1 - 18. The 2006 regulations retained the rule that the amount and uses of water permitted under the Domestic Well Statute may be limited by court order and set forth additional provisions under which the amount and uses of water permitted under the Domestic Well Statute may be limited. *See* N.M.A.C. § 19.27.5.9(D) (The "amount and uses of water permitted [under the Domestic Well Statute] are subject to such additional or more restrictive limitations imposed by a court, or by lawful municipal or county ordinance."); N.M.A.C. § 19.27.5.13(A) ("The state engineer may reject an application for a 72-12-1.1 domestic well permit when the proposed 72-12-1.1 well is to be located in an area where a restriction on the use of water

or the drilling of new wells has been imposed by a court."); N.M.A.C. § 19.27.5.13(A) ("The state engineer may reject an application for a 72-12-1.1 domestic well permit when the proposed 72-12-1.1 domestic well is to be located in an area of water quality concern where a prohibition on or a recommendation aginst the drilling of new wells has been established by a government entity."); N.M.A.C. § 19.27.5.13(B) ("The state engineer may set forth conditions of approval for a 72-12-1.1 domestic well permit); N.M.A.C. § 19.27.5.13(B)(6) (One of those conditions is that the "amount and uses of water permitted are subject to such limitations as may be imposed by the courts or by lawful municipal and county ordinances which are more restrictive than the conditions of this permit and applicable state engineer regulations."); N.M.A.C. § 19.27.5.13(B)(11) (Another condition applicable to domestic well permit approval is "The right to divert water under this permit is subject to curtailment by priority administration as implemented by the state engineer or a court."); N.M.A.C. § 19.27.5.14 ("The state engineer may declare all or part of a stream connected aquifer as a domestic well management area to prevent impairment to valid, existing surface water rights" and limit the amount of water diverted from domestic wells in the management area to 0.25 acre-foot per annum per household or less);

The New Mexico Court of Appeals has recently recognized that the State Engineer promulgated regulations which "established conditions of approval of [a permit] application under the [Domestic Well Statute], among which are the conditions that he can limit the use of water and that the right to divert water is subject to curtailment by priority administration implemented by the State Engineer or a court." *Bounds v. New Mexico*, 2011-NMCA-011, ¶ 24.

**Motion to Quash Preliminary Injunction**

Trujillo's Motion, which seeks to quash the Court's 1983 Order on due process, equal protection and jurisdictional grounds, is essentially a motion to reconsider. Although the Court has

the power to revisit its prior decisions, "as a rule [the Court] should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988)(citation omitted). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) ("a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law"). "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.1991).

**Due Process**

Trujillo asserts that the 1983 Order deprives her of property without procedural or substantive due process. (*See* Motion at 11-14). Trujillo contends that the 1983 Order deprives her of "her statutory entitlement to at least one-acre foot of domestic well water for non-commercial irrigation." (*Id.* at 11). Trujillo argues that because the 1983 Order was entered before she was made a party to this case, she was not given notice or an opportunity to be heard and, thus, she was not afforded procedural due process. (*See id.* at 11). Trujillo also argues that she was not afforded substantive due process because the 1983 Order is arbitrary in that it "was entered without findings of facts such as the quantity of groundwater in the [Nambe-Pojoaque-Tesuque] Basin, how much groundwater each party is entitled to in the [Nambe-Pojoaque-Tesuque] Basin and what is each party's consumptive use." (*Id.* at 13).

"[T]o prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest." *Teigen v.*

6

*Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). "An individual has a property interest in a benefit for purposes of due process protection only if he has a legitimate claim of entitlement to the benefit, as opposed to a mere 'abstract need or desire' or 'unilateral expectation.'" *Id.* at 1078-1079. "[C]onstitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials." *Hulen v. Yates*, 322 F.3d 1229, 1240 (10th Cir.2003). "Courts must look to existing rules or understandings that stem from an independent source such as state law to define the dimensions of protected property interests." *Narotzky v. Natrona County Memorial Hosp. Bd. of Trustees*, 610 F.3d 558, 565 (10th Cir. 2010).

Trujillo argues that the Domestic Well Statute entitles her to the use of one acre-foot of water per year for irrigation. (Motion at 11). Trujillo reads the Domestic Well Statute in isolation from the rest of the water code and has not demonstrated that she has a protected property interest entitling her to the use of one acre-foot of water per year for irrigation. "Statutes are enacted as a whole, and consequently each section or part should be construed in connection with every other part or section, giving effect to each, and each provision is to be reconciled in a manner that is consistent and sensible so as to produce a harmonious whole . . . ." *Lion's Gate Water v. D'Antonio*, 2009-NMSC-057, ¶ 23 (construing New Mexico's water code).

Although the Domestic Well Statute requires "that domestic well permits be issued without prior evaluation of water availability," *Bounds v. New Mexico*, 2011-NMCA-011, ¶ 40, the Court concludes that the Domestic Well Statute, when construed with other provisions in New Mexico's water code, does not grant a domestic well permit holder an absolute right to use one acre-foot of water for noncommercial irrigation. Instead, New Mexico state law provides that the State Engineer may issue domestic well permits with conditions which limit the amount and use of water, including

7

limitations imposed by courts.  Consequently, Trujillo is not "statutorily entitled" to the use of one acre-foot of water per year for noncommercial irrigation and her due process argument fails.  *See Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007) ("[I]t is only after the plaintiff first demonstrates the existence and deprivation of a protected property interest that the plaintiff is constitutionally entitled to an appropriate level of process").

**Equal Protection**

Trujillo seeks to quash the 1983 Order claiming she is denied equal protection of the law. (*See* Motion at 9-10).  The Equal Protection Clause of the Fourteenth Amendment mandates that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  "In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them."  *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998); *Coalition for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008) (the Equal Protection Clause "does not forbid classifications.  It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike").

Trujillo contends that she is denied equal protection of the law because the State Engineer restricts her use of her domestic well water "to indoor use only while allowing the Pueblos to use domestic well water without any restriction."  (Motion at 10).  Trujillo makes the conclusory allegation that "[a]s parties to this action, [Trujillo] and the Pueblos are similarly situated before the Court."  (Motion at 9).  One aspect relevant to whether Trujillo and the Pueblos are similarly situated is the legal basis for each party's water rights.  *See U.S. v. Ballard*, 184 F.Supp. 1, 12 (D.N.M. 1960) (Rogers, J.) (The provisions of the New Mexico Constitution, statutory law of New Mexico and the case law of the Federal, Territorial and the State Courts of New Mexico govern the

acquisition of water rights). Trujillo does not discuss which provisions govern the Pueblos' rights to use water and, therefore, has not shown that the Pueblos are similarly situated to Trujillo. Trujillo also states that other domestic well users outside of the Nambe-Pojoaque-Tesuque Basin are not restricted to indoor use only. (*See* Motion at 10). She makes no argument to show that she and the domestic well owners outside the Nambe-Pojoaque-Tesuque Basin are in all relevant respects alike. Consequently, Trujillo has not made a threshold showing that she was treated differently from others who were similarly situated.

The 1983 Order applies to every person that applies for a domestic well permit and, thus, is facially neutral. *See Washington v. Davis*, 426 U.S. 229, 242 (1976) ("we have not held that a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another"); *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 273-74 (1979) ("when a neutral law has a disparate impact upon a group that has historically been the victim of discrimination, an unconstitutional purpose may still be at work . . . purposeful discrimination is the condition that offends the Constitution"). Trujillo recognizes that the 1983 "Order does not single out any particular group or person" but does not argue that the 1983 Order is invalid under the Equal Protection Clause. (Motion at 9).

Instead, Trujillo argues that the State Engineer's unequal application of the 1983 Order denies her equal protection: "the [State Engineer] applies the [indoor use only] restriction to the non-Indians only. Only the non-Indians are limited in the amount of groundwater that can be diverted." (Motion at 9). When a party alleges the discriminatory administration of a facially neutral ordinance or policy, equal protection standards require "both that a policy or decision have a discriminatory effect and that it be motivated by a discriminatory purpose." *See United States v.*

*Moore*, 89 F.3d 851, 1996 WL 364614 *3 (10th Cir.) (unpublished opinion).  Trujillo does not address the State's purpose in treating the Pueblos differently from the non-Indians with regard to domestic well permits.  Trujillo has not shown that the State Engineer's policy is motivated by a discriminatory purpose.  Nor has she demonstrated that the 1983 Order should be vacated on equal protection grounds.

**Subject Matter Jurisdiction**

Trujillo argues that the Court does not have subject matter jurisdiction to adjudicate her water right because the State Engineer has not complied with N.M. Stat. Ann. § 72-4-17.  (*See* Motion at 14-15).  Trujillo contends that N.M. Stat. Ann. § 72-4-17 requires that the State Engineer provide the Court with a hydrographic survey "as the initial step in the adjudication."  (*See id.*).  Trujillo also contends that N.M. Stat. Ann. § 72-4-17 requires the State Engineer to quantify the amount of groundwater in the basin and to determine whether any rights are being impaired before the Court acquires subject matter jurisdiction.  (*See id.*).  Trujillo misconstrues the statute.

N.M. Stat. Ann. § 72-4-17 provides that when an adjudication is filed, "the court shall, by its order duly entered, direct the state engineer to make or furnish a complete hydrographic survey of such stream system as hereinbefore provided in this article, in order to obtain all data necessary to the determination of the rights involved."  The statute does not require the State Engineer to provide a complete hydrographic survey before the Court acquires subject matter jurisdiction.  *See New Mexico v. Sharp*, 66 N.M. 192, 197 (1959) (an adjudication court proceeding piecemeal, following a step by step procedure which eventually encompasses the entire basin, is in substantial compliance with the requirements of the adjudication statutes and is acting within its jurisdiction).  New Mexico state law requires that a hydrographic survey be completed before entry of the final decree adjudicating the water rights in a basin.  *See id.*, 66 N.M. at 196 ( "It is true that no decree

declaring the priority, amount, purpose, periods and place of use . . . [of each water right] can be entered concerning the waters of the Roswell Artesian Basin until hydrographic surveys thereon have been completed and all parties impleaded").

The Court has subject matter jurisdiction because the United States is a plaintiff in this case. "28 U.S.C. § 1345 grants broad jurisdictional power to the district courts over suits when the United States is plaintiff." *U.S. v. Lahey Clinic Hospital, Inc.*, 399 F.3d 1, 9 (1st Cir. 2005). The statute provides: "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits, or proceedings commenced by the United States or by any agency or officer thereof expressly authorized to sue by Act of Congress." 28 U.S.C. § 1345. "Section 1345 creates subject matter jurisdiction." *U.S. v. Lahey Clinic Hospital, Inc.*, 399 F.3d at 9.

**Conclusion**

Trujillo has not shown that the 1983 Order is clearly erroneous or results in manifest injustice. The Court will, therefore, deny her Motion to Quash Preliminary Injunction (Doc. No. 7403, filed June 16, 2011).

**IT IS SO ORDERED.**

Dated this 30th day of March, 2012.

**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**