**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

STATE OF NEW MEXICO *ex rel.*
State Engineer,

       Plaintiff,

    v.                                                                          No.  66cv06639 WJ/WPL

R. LEE AAMODT *et al.*,

       Defendants,

    and

UNITED STATES OF AMERICA,
PUEBLO DE NAMBÉ,
PUEBLO DE POJOAQUE,
PUEBLO DE SAN ILDEFONSO,
and PUEBLO DE TESUQUE,

       Plaintiffs-in-Intervention.

## MEMORANDUM OPINION AND ORDER
## APPROVING SETTLEMENT AGREEMENT

    **THIS MATTER** comes before the Court on approximately 800 Objections to the
Settlement Agreement and Proposed Partial Final Judgment and Decree on the Water Rights of
the Pueblos of Tesuque, Pojoaque, Nambé and San Ildefonso, and Interim Administrative Order.
*See* Doc's 8094 – 9877.  For the reasons stated below, the Court will **OVERRULE** all of the
Objections, **APPROVE** the Settlement Agreement, Doc. 7970-1, **ENTER** the proposed Partial
Final Judgment and Decree of the Water Rights of the Pueblos of Nambé, Pojoaque, San
Ildefonso, and Tesuque, Doc. 7970-3, and **ENTER** the proposed Interim Administrative Order,
Doc. 7970-2.

## PROCEDURAL BACKGROUND

    Settlement negotiations regarding the water rights of the Pueblos began in 2000 and
resulted with a completed Settlement Agreement in 2006.  On December 18, 2007, the Court

entered an order establishing the procedure for approval of the Settlement Agreement.  *See* Doc. 6282; amended by Doc. 7310, filed February 9, 2011.  Both the initial and the amended procedural orders provided that after notification of federal approval of the Settlement Agreement, or notification of completion of the process to address any required modifications of the Settlement Agreement, the Court would enter an order to show cause why the Court should not approve the Settlement Agreement.  The Court entered its Second Amended Procedural Order which shortened deadlines and approved the proposed Objection form.  *See* Doc. 7988, filed November 4, 2013.  The Objection form instructs objectors to "state the specific legal and factual basis for your objection," and to "state how your water rights will be injured or harmed in a legally cognizable way by the Settlement Agreement and entry of the proposed decree and interim order."  Doc. 7971-3 at 2, filed October 3, 2013.

On December 8, 2010, the Aamodt Litigation Settlement Act was enacted.  Pub. L. No. 111-291 §§ 601 *et seq*., 124 Stat. 3134.  The Settlement Act authorizes the Settlement Agreement on the condition that the Court approves a partial final decree that sets forth the water rights and other rights to water to which the Pueblos are entitled under the Settlement Agreement and a final decree that sets forth the water rights for all parties to this case by September 15, 2017.  Settlement Act §§ 621(a) and 623(a)(2)(G) and (H).  If the final decrees are not approved by September 15, 2017, the Settlement Agreement will no longer be effective and any unexpended federal funds appropriated to carry out the activities authorized by the Act will be returned to the federal government.  Settlement Act §§ 621(b)(1) and (3).  The Settlement Act also authorizes the design and construction of a Regional Water System to distribute water to the Pueblos and the Santa Fe County Water Utility.  Settlement Act § 611(a).

During 2011 and 2012, the Settlement Parties revised the Settlement Agreement to

conform to the provisions in the Settlement Act.   In October, 2013, the State of New Mexico certified to the Court that modifications to the Settlement Agreement necessary to conform it to the Aamodt Litigation Settlement Act have been completed and that the conformed Settlement Agreement has been executed by the Settlement Parties.  *See* Doc. 7970.  Copies of the proposed Interim Administrative Order and the proposed Partial Final Judgment and Decree were attached to the Certification.

On December 6, 2013, the Court entered an Order to Show Cause why the Court should not approve the Settlement Agreement.  *See* Doc. 8035.  The Order to Show Cause provided summaries of the Settlement Agreement, the Interim Administrative Order and the proposed Partial Final Decree, and gave notice where complete copies of the Settlement Agreement, the Interim Administrative Order and the proposed Partial Final Decree may be reviewed.  The deadline for objections was April 7, 2014.

Approximately 800 Objections have been filed.   Pursuant to the Court's Case Management Order, Doc. 9506, several Settlement Parties filed memoranda summarizing the 800 Objections and stating arguments in support of the position that the Court should approve the Settlement Agreement and enter the Partial Final Decree at this time.  *See* Doc's 9910 (United States and Pueblos of Nambé, Pojoaque, San Ildefonso and Tesuque), 9911 (Rio de Tesuque Association, Inc.), 9912 (Members of the Rio Pojoaque Acequia and Water Well Association, Inc.) and 9913 (State of New Mexico, Santa Fe County and City of Santa Fe).  Of the 800 Objections, three groups filed responses in opposition to the memoranda in support of approval of the Settlement agreement.  *See*  Doc's 9957 (Paul White), 9972 (the Dunn Group) and 9973 (the Atencio Group).[1]  The Settlement Parties that filed the four memoranda in support

---

[1] Members of the Rio Pojoaque Acequia and Water Well Association filed a response, Doc.

also filed reply briefs.  *See* Doc's 10009 (Rio de Tesuque Association, Inc.), 10010 (Members of the Rio Pojoaque Acequia and Water Well Association, Inc.), 10011 (United States and Pueblos of Nambé, Pojoaque, San Ildefonso and Tesuque), and 10012 State of New Mexico, Santa Fe County and City of Santa Fe).  The Court has reviewed the Objections as well as the pleadings in support of and in opposition to the Court approving the Settlement Agreement and entering the Partial Final Decree.

## STANDARD OF REVIEW

In its Order granting the motion of the Settlement Parties to establish procedures for approval of the Settlement Agreement, the Court ordered:

> The burden shall be on the objecting party to demonstrate that the rights proposed to be settled pursuant to the Settlement Agreement should not be quantified and administered as proposed in the Settlement Agreement.  Objections shall be required to demonstrate that adoption and implementation of the Settlement Agreement is not fair, adequate, reasonable, is not in the public interest, or is not consistent with applicable law.  Objections must include the following:  (1) name and address of objector; (2) description of water rights claimed by objector; (3) statement of the specific legal and factual basis of the objection; and (4) how the objector will be injured or harmed by the Settlement Agreement in a legally cognizable way.

Doc. 6282 at 4-5.

> In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate. In assessing whether the settlement is fair, reasonable and adequate the trial court should consider:
>
> > (1) whether the proposed settlement was fairly and honestly negotiated;
> >
> > (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
> >
> > (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

---

9971, but later withdrew their response, Doc. 9974.

4

(4) the judgment of the parties that the settlement is fair and reasonable.

*Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

## DISCUSSION

The Objections can be generally characterized as:  (i) complaints about the procedure for the approval of the Settlement Agreement; (ii) concerns about the implementation of the Settlement Agreement; and (iii) disagreements about the application of state and federal laws.

### Settlement Agreement Approval Procedure

Many of the Parties objected to the Settlement Agreement approval procedure asserting: (i) they were excluded from the Settlement negotiations; (ii) the Executive Branch of the State of New Mexico did not have authority to settle; (iii) service of the Order to Show Cause was not proper; and (iv) there was insufficient time and information to assess the Settlement and file objections.

### Excluded from Participation in Settlement Negotiations

Some Objectors complain that they were excluded from the settlement negotiations and that information regarding the settlement negotiations was kept confidential.  *See* Doc. 8424 at 8.

The Court has previously addressed this issue stating:

In litigation involving numerous parties, litigants sometimes seek a settlement with less than all of the parties.  FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION 174 (4th ed. 2004).  In this adjudication, where there are hundreds of claimants, it is extremely unlikely that settlement negotiations involving every party in this case would resolve successfully in a reasonable period of time.  There is nothing impermissible or improper about the Settlement Parties attempting to settle their disputes among themselves and allowing other parties to join in the settlement later.

. . . .

The negotiations were closed to the public because the Court ordered that all oral

and written statements made in the course of discussions with the mediator be kept confidential. (Order, Doc. No. 5629, filed September 15, 2000). The purpose of the confidentiality rule is to encourage the parties to be candid with the mediator by making them comfortable that their positions, willingness to settle, weaknesses of their case, etc. will not prematurely influence the trial judge. Both the United States Congress and the Court of Appeals for the Tenth Circuit, in which this Court sits, recognize that the guarantee of confidentiality is essential to the proper functioning of a settlement program. *See* Alternative Dispute Resolution Act, 28 U.S.C. § 652(d) (each district court shall, by local rule, provide for the confidentiality of the mediation process and prohibit disclosure of confidential mediation communications); *Clark v. Stapleton Corp.*, 957 F.2d 745, 746 (10th Cir. 1992) (for settlement program to be successful, participants must trust that matters discussed at a settlement conference will not be revealed to the judge).

Doc. 6236 at 10-11.

## Authority of Executive Branch to Settle

Some Objectors contend that "only the New Mexico legislature has authority to bind the State into compacts and agreements," and that the "New Mexico Executive branch Officers who signed the proposed Settlement Agreement lacked authority to authorize it." Dunn Response at 20-26.

The Court has previously overruled such an objection in the Taos Adjudication after concluding that those objectors ignored New Mexico law, specifically the statute governing compromise, satisfaction or release by the attorney general or district attorney:

**The attorney general** and district attorneys of this state in their respective districts, when any civil proceedings may be pending in their respective districts, in the district court, in which the state or any county may be a party, whether the same be an ordinary suit, scire facias proceedings, proceedings growing out of any criminal prosecution, or otherwise, **shall have power to compromise or settle said suit or proceedings**, or grant a release or enter satisfaction in whole or in part, of any claim or judgment in the name of the state or county, or dismiss the same, or take any other steps or proceedings therein which to him may appear proper and right; and all such civil suits and proceedings shall be entirely under the management and control of the said attorney general or district attorneys, **and all compromises, releases and satisfactions heretofore made or entered into by said officers are hereby confirmed and ratified.**

N.M. Stat. Ann. § 36-1-22 (1978) (**emphasis added**).

Mem. Op. and Order at 7-8, Doc. 5958, filed July 30, 2015, in *New Mexico v. Abeyta*, No. 69cv7896 (D.N.M.) (Vázquez, J.).

**Service of the Order to Show Cause**

Some Objectors complain that the Order to Show Cause was served by first class mail, instead of by certified mail as required by Rule 4 of the Federal Rules of Civil Procedure. The Objectors assert that because there is no proof that Defendants received the Order to Show Cause and if there are errors in the addresses in the State's mailing list, there is potential for future litigation by those Defendants who did not receive the Order to Show Cause, thereby jeopardizing the status of all subfile orders.

The Court overrules this objection for the following reasons. Rule 4 applies to service of summons and is not applicable to the service of the Order to Show Cause. Rule 5, which governs service of pleadings and other papers, provides that a "paper is served under this rule by . . . mailing it to the person's last known address—in which event service is complete upon mailing." Fed. R. Civ. P. 5(b)(2)(C). The Court ordered the State to update its service list of known claimants and to mail the Order to Show Cause to those claimants. *See* Procedural Order at 2-3, Doc. 6282. With regard to unknown claimants and known claimants whose addresses were not on the updated service list, the Court ordered the State to publish the Order to Show Cause in a newspaper of general circulation in the Pojoaque Basin and in the City and County of Santa Fe once a week for four weeks, to post an electronic version of the Order to Show Cause on the Office of the State Engineer's website, and to post the Order to Show Cause at the Office of the State Engineer in Santa Fe, the County of Santa Fe's Pojoaque Satellite Office, and at the Joe M. Stell Ombusman Program at the Utton Center at the University of New Mexico. *See*

7

Amended Procedural Order at 3-4, Doc. 7310.  The publication and posting of the Order to Show Cause served "as notification to those water rights claimants who were not known with reasonable diligence to the Settling Parties and claimants whose addresses are not on the updated service list."  Doc. 7310 at 10; *see also Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 316 (1950) (The Supreme Court of the United States "has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights").

**Insufficient Time and Information to Decide about Settlement Agreement**

Some Objectors assert that they did not have sufficient time to review the "very complex 49 page settlement agreement, the order to show cause, the partial final decree, the summary, the interim administrative order and the correspondence from the State Engineer."  The approximately 800 Objections that raise the numerous issues addressed in this Order indicate that the 60-day period for filing objections provided sufficient time to review the Settlement Agreement.

The Objectors also assert that they cannot properly assess the Settlement Agreement because several documents referenced in the Settlement Agreement, i.e. the Joint Powers Agreement, the Water Master Rules, the Operating Agreement, and the Environmental Impact Statement, are not complete.  The Court has previously denied a request to stay the Settlement Agreement approval process until those documents are completed because the parties requesting the stay did not show how the requested documents are relevant to determining whether the

Settlement Agreement is fair, adequate, reasonable, in the public interest or consistent with applicable law. *See* Magistrate Judge William P. Lynch's Order, Doc. 9473 (denying motion for stay);  Mem. Op. and Order, Doc. 9674 (overruling objections to Magistrate Judge's Order denying motion for stay) (Johnson, J.).  The Objections now before the Court similarly fail to show that those documents are necessary for determining whether the Settlement Agreement is fair, adequate, reasonable, in the public interest or consistent with applicable law.

**Implementation of the Settlement Agreement**

Some Objectors expressed concerns about the fairness of the implementation of the Settlement Agreement alleging that the State Engineer has a conflict of interest, there is unequal representation on the Water Authority Board, and non-Indians do not have the right to enforce the Settlement Agreement.  Others express concerns about their ability to afford the cost to connect to the Regional Water System, and the amount and quality of the water available for their use.

**Conflict of Interest**

Some claimants assert that there appears to be a conflict of interest in the terms of the Settlement Agreement relating to the role of the State Engineer, noting that Section 5.2.1.1 provides the State Engineer with the right to restrict Pueblo water rights, Section 5.2.1.2 provides that a Water Master has the same authority over non-Indian water rights, while Section 5.2 designates the State Engineer as the Water Master.  Those claimants do not explain how the State Engineer's duty to administer Pueblos' water rights will conflict with his duty to administer the water rights of the non-Indians, and vice versa.

**Unequal Representation on Board**

Some claimants object to the proposed representation on the Water Authority Board of

four tribal representatives and one county representative as unfair, and suggest that the Board "should reflect the interest of the parties involved approx. 6000 non-tribal and 1000 tribal individuals."

The Court finds that the proposed representation of one representative for each of the five governmental entities that will be served by the Water Authority is not unfair.  The Regional Water Authority will be established by the County and the Pueblos "to operate and maintain the diversion and treatment facilities, certain transmission pipelines and other facilities of the Regional Water System" consistent with the Settlement Agreement "for the purpose of ensuring a reliable firm supply of water to all users of the Regional Water System."  Settlement Agreement Sections 1.6.30, 9.5 and 9.6.1.  One representative for each of the five governmental entities is appropriate because those entities are responsible for the operation and maintenance of the regional water system infrastructure, and are not determining the allocation of water between the Pueblos and the County users of the system.  The Pueblos and County are required to submit an Operating Agreement with provisions to ensure that the operation and maintenance of the system is in accordance with the Settlement Agreement; there must also be provisions for dispute resolution.  *See* Settlement Act §612.   Furthermore, the claimants do not demonstrate how any alleged unequal representation will harm them if they choose to not join the settlement.

**Non-Indian Enforcement**

Some Objectors "object to the lack of right to enforce the settlement agreement by non-Indians."

The Settlement Agreement will be enforced.  Under Section 5.2 of the Settlement Agreement, the State Engineer "agrees to perform the function of Water Master" which includes "the authority to curtail Pueblo surface and groundwater diversion in order to ensure compliance

with the terms of, and the delivery of water in accordance with, this Agreement, the Interim Administrative Order, and the Final Decree."   In addition, Section 1.5 of the Settlement Agreement provides that "the Decree Court shall retain continuing jurisdiction to interpret and enforce the terms, provisions, and conditions of the Agreement, the Interim Administrative Order, and the Final Decree."   "'Decree Court' means the United States District Court for the District of New Mexico."   Settlement Agreement Section 1.6.12.   Thus, this Court, the United States District Court for the District of New Mexico, will retain continuing jurisdiction to enforce the provisions of the Settlement Agreement, the Interim Administrative Order and the Final Decree.

**Personal Financial Condition/Water System Availability**

Some Objectors expressed concerns about being able to afford the cost to connect to the County Water Utility ("CWU") and the cost of the water, or that the water system will not extend to their property.

Section 3.1.7.1 of the Settlement Agreement states: "a Settlement Party who is an owner of a water right from a well shall not be required to connect to the CWU water system and shall not be required to cease use of the well."   Doc. 7970-1 at 25.   Furthermore, no person that elects "to connect to the CWU under Section 3.1.7.2.1 shall be required to cease use of such well and connect to the CWU unless *all connection expenses are paid by the Pojoaque Valley Water Utility Connection Fund or other third party.*"   Doc. 7970-1 at 27.   Section 3.1.7.2.1 also provides that those persons electing to connect to the County Water Utility "shall be permitted to continue to use [their] well  . . . until they are able to connect to the [County Water Utility]  and obtain service."   Thus, there is no merit to the contention that some Objectors cannot afford the cost of connecting to the CWU.

**Water Quantity Insufficient/Outdoor Use Restriction**

Some claimants object to the "restriction against outdoor use of a domestic well for irrigation" and state that limitations on the quantity of water they are allowed to use will be insufficient to meet their needs.

The Settlement Agreement will not affect the amount of water use for those claimants that choose to not join the Settlement. For claimants who do not join the Settlement, the amount of their water rights will be determined based on historical beneficial use and the terms of their permit.

**Water Quality**

Some Objectors are concerned that the treated Rio Grande water provided by the CWU would not be the same quality of their well water.

Section 3.1.7.1 of the Settlement Agreement states: "a Settlement Party who is an owner of a water right from a well shall not be required to connect to the [County Water Utility] water system and shall not be required to cease use of the well." Doc. 7970-1 at 25. In addition, "water supplied by the [County Water Utility] must meet federal and state regulatory standards for drinking water quality." State Parties' Joint Memorandum at 64.

**Transfer of Water Rights before Regional Water System Complete**

Some claimants object to the transfer of their water rights to the CWU upon entry of the Partial Final Decree and before the Regional Water System is completed.

The Settlement Agreement does not require any party to transfer their domestic well water rights to the CWU unless they choose to connect to the CWU; those rights are transferred upon connection to the CWU, not upon entry of the Final Partial Decree. *See* Section 3.1.7.2.1 of the Settlement Agreement; Section 3.1.7.1 ("a Settlement Party who is an owner of a water

right from a well shall not be required to cease use of the well.").[2]  The Settlement Agreement

does not require parties who do not join the Settlement to transfer their water rights to the CWU.

**Taking**

Some Objectors contend that "[b]y the terms of the settlement agreement (See Section 3),

the beneficial use of 3.0 AFY of groundwater granted by permits issued after 1956 by the New

Mexico State Engineer, are reduced to 0.5 AFY without just compensation, arbitrarily and in

violation of the Domestic Well Statute."

Those Objectors misread Section 3 of the Settlement Agreement which governs Non-

Pueblo Water Rights and states:

> The quantity of the right for each [domestic] well . . . *shall be limited to the*
> *historic beneficial use from such well*, provided, however, that in no event shall
> the total diversion from any such well exceed 3 AFY, and provided further that
> the State agrees, and the Settlement Parties will not oppose, to move the Court to
> presume that historic beneficial use from a well is .5 AFY per household, *unless a*
> *greater historic beneficial use is shown* or unless a more restrictive diversion limit
> applies pursuant to court order, covenant or ordinance.

Settlement Agreement §3.1.2.2 (*emphasis added*).  The Court has previously addressed the issue

of whether water rights for domestic wells in New Mexico are limited to the quantity of water

beneficially used, as opposed to the permit amount of three acre-feet per year:

> In the Zuni River Basin Adjudication the Court stated:
>
>> New Mexico law is clear on the subject.   The constitutional
>> provision and statutes . . . as well as abundant case law clearly state
>> that beneficial use defines the extent of a water right.   This
>> fundamental principle is applicable to all appropriations of public
>> waters.   Only by applying water to beneficial use can an
>> appropriator acquire a perfected right to that water.
>
> *United States v. A & R Productions*, No. 01cv72, Doc. No. 733 at 4, filed June 15,

---

[2] An exception to this provision are new groundwater points of diversion, in which case
diversions from the new point of diversion must cease and shall be connected  to the CWU for
water service as soon as it is available.  *See* Settlement Agreement §§ 3.1.4.1 and 3.1.7.1.

2006 (D.N.M.) (Black, J.) (citations and quotation marks omitted).

*State of New Mexico v. Aamodt*, No. Civ. 66-6639 MV/WPL, Doc. 7757 at 6-7, filed September 20, 2012 (D.N.M.) (Vázquez, J.).

**Shared Wells**

Some Objectors assert that the Settlement Agreement does not address shared wells.

Section 3.1.2.2 states that the:

> quantity of the right for each Section 72-12-1 [Domestic Well Statute] well, including all wells subject to the Post-1982 Well Agreement, shall be limited to historic beneficial use from such well, *provided*, however, that in no event shall the total diversion from such well exceed 3 AFY, and *provided further* that the State agrees, and the Settlement Parties will not oppose, to move the Court to presume that historic beneficial use from a well is .5 AFY **per household** . . . .

Doc. 7970-1 at 22 (**emphasis added**). The "per household" language indicates that the Settlement Agreement addresses both single-user wells and shared wells.

## Application of State and Federal Law

The final general category of objections relates to whether implementation of the Settlement Agreement will violate state or federal laws.

**McCarran Amendment**

Some claimants assert that "the application of different water laws to the Pueblos and the non-Indians" and "the use of the federal reserve doctrine to determine the Pueblo's water rights" are violations of the McCarran Amendment.

The McCarran Amendment, which provides for the joinder of the United States as a defendant in water rights adjudications states:

> Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a

necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: *Provided,* That no judgment for costs shall be entered against the United States in any such suit.

43 U.S.C. § 666(a).  Except for stating that the United States is deemed to have waived any right to plead that State laws are inapplicable, the McCarran Amendment does not address which laws are applicable to the determination of Pueblo water rights.

**Equal Protection**

Some claimants object stating that the Settlement Agreement "violates the Equal Rights and Protection Clause of the Constitution [because] it allows one group of people rights and protection that are denied to another group of people."

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The two groups the Objectors refer to, the individual non-Indian claimants and the four Pueblos, are not similarly situated.  Unlike the individual non-Indian claimants, the Pueblos are federally recognized Indian tribes, with the United States as their guardian and trustee.  "The United States has not relinquished jurisdiction and control over the Pueblos and has not placed their water rights under New Mexico law." *New Mexico v. Aamodt*, 537 F.2d 1102, 1111 (10th Cir. 1976).

**Forfeiture/ Pueblo Uses of Water**

Some Objectors object to "the double standard of treatment for the Non-Indians and the Pueblos as proposed by the settlement agreement" noting that "the Pueblos' water rights are protected from forfeiture but not the non-Indians' rights."   Other Objectors argue that "the State Engineer is required to adjudicate water rights based on specific criteria and existing law," that

"the law in New Mexico is that beneficial water rights existing and used prior to 1907, have been confirmed," and that the "Settlement Agreement seeks to modify this legal standard and provide water rights to the Pueblos that were not established by beneficial use prior to 1907."  Dunn Response at 27-28.  Some Objectors complain that the Settlement Agreement is unfair because "Non-Pueblo water-right owner Parties are required to show historic beneficial use of their water right . . . [while] the Pueblo Parties have no requirement to demonstrate historic beneficial use. Those Parties are simply allocated a water right to support desired use, including such non-historic uses as golf courses."

These Objections fail to recognize the applicable laws.  "The rights of the non-Indians are subject to the water laws of New Mexico.  The water rights of the Pueblos are not subject to the laws of New Mexico because the United States has never surrendered its jurisdiction and control."  *New Mexico v. Aamodt*, 537 F.2d 1102, 1112 (10th Cir. 1976).  The Settlement Agreement does not govern forfeiture of water rights.  Forfeiture of water rights for non-Indians is governed by State statute.  *See* N.M.S.A § 72-5-28, Failure to use water; forfeiture.

**Domestic Well Statute Violation**

Some Objectors contend that the Settlement Agreement violates the New Mexico Domestic Well Statute because the Agreement denies domestic well owners protections from priority calls.

Neither the current domestic well statute, N.M. Stat. Ann. § 72-12-1.1, which states:

A person, firm or corporation desiring to use public underground waters described in this section for irrigation of not to exceed one acre of noncommercial trees, lawn or garden or for household or other domestic use shall make application to the state engineer for a well on a form to be prescribed by the state engineer. Upon the filing of each application describing the use applied for, the state engineer shall issue a permit to the applicant to use the underground waters applied for; provided that permits for domestic water use within municipalities shall be conditioned to require the permittee to comply with all applicable

16

municipal ordinances enacted pursuant to Chapter 3, Article 53 NMSA 1978.

nor its predecessor statute, N.M. Stat. Ann. § 72-12-1, which states in relevant part:

> Any person, firm or corporation desiring to use any of the waters described in this act for watering livestock, for irrigation of not to exceed one acre of noncommercial trees, lawn, or garden; or for household or other domestic use shall make application or applications from time to time to the state engineer on a form to be prescribed by him.  Upon the filing of each such application, describing the use applied for, the state engineer shall issue a permit to the applicant to so use the waters applied for.

provide any protection from priority calls.  The New Mexico Supreme Court recently stated: "Nothing in the language of the [Domestic Well Statute] prevents domestic well permits from being administered in the same way as all other water rights, including priority administration—exactly what Article XVI, Section 2 of the New Mexico Constitution requires." *Bounds v. State ex rel. D'Antonio*, 2013-NMSC-037 ¶28.

**Authority to Close Basin to New Domestic Well Permits**

Some Objectors claim that the State Engineer "is without jurisdiction to unilaterally and arbitrarily close the [Nambe-Tesuque-Pojoaque] aquifer to further development."  Section   5.1.1 of the Settlement Agreement states:  "The Pojoaque Basin is fully appropriated and there shall be no new appropriations in the basin after the Enforcement Date of this Agreement."  Doc. 7970-1 at 37.

The State Engineer has the authority to close the basin to further development and to limit the issuance of domestic well permits.  *See Lion's Gate Water v. D'Antonio*, 2009-NMSC-057, ¶ 24 (the New Mexico legislature has granted the State Engineer broad powers to implement and enforce the water laws administered by him); N.M. Stat. Ann. § 72-2-8(A) ("The state engineer may adopt regulations and codes to implement and enforce any provision of any law administered by him and may issue orders necessary to implement his decisions and to aid him in

the accomplishment of his duties.  In order to accomplish its purpose, this provision is to be liberally construed."); N.M. Stat. Ann. § 72-2-8(H) ("Any regulation, code or order issued by the state engineer is presumed to be in proper implementation of the provisions of the water laws administered by him."); N.M. Stat. Ann. § 72-5-7 ("If, in the opinion of the state engineer, there is no unappropriated water available, he shall reject such application."); *City of Albuquerque v. Reynolds*, 71 N.M. 428, (1962) ("The jurisdiction and duties of the state engineer with reference to streams and underground waters are the same").

**Violates State Law by Changing Priorities**

Some Objectors argue that the Settlement Agreement "violates current State water law, by changing the priority rights of water right holders that are junior to the Pueblos . . . . [by] creating a new system that effectively punishes objecting water rights owners for failing to agree to settlement by forcing them to bear curtailment of future priority calls by the Pueblos while rights that are junior are excepted."  Dunn Response at 9.  These Objectors argue that the Settlement Agreement effectively changes priority dates because it provides protection from priority enforcement for junior non-Pueblo rights for those claimants who join the Settlement, while leaving senior non-Pueblo rights for claimants who do not join the Settlement subject to priority enforcement.

This objection is overruled.  The Settlement Agreement does not change priority dates. *See* Sections 3.1.1.1 and 3.1.2.1 (priorities for wells "shall be the priority adjudicated in the sub-file order for each such well"); Section 3.2.1 (priorities for surface rights shall be that agreed to by, or adjudicated between, the State and the owner of the right, subject to *inter se* challenges by other parties).  While the Settlement Agreement does provide some protection from priority enforcement to non-Pueblo claimants who join the Settlement, it also provides that the State

Engineer "shall administer the Non-Pueblo water rights adjudicated by the Decree Court as set forth in this Agreement and the Final Decree," and "has the authority, pursuant to state law, to curtail non-Pueblo surface and groundwater diversions and shall exercise his authority as necessary in order to ensure compliance with the terms of . . . this Agreement . . . and the Final Decree."  Settlement Agreement §§ 5.2 and 5.2.1.1.  Section 5.3 of the Settlement Agreement provides that counsel for the State Engineer, the United States, and the Pueblos, in consultation with counsel for the other Settlement Parties, shall agree on a set of rules to be proposed for adoption by the State Engineer to govern his responsibilities in administering the non-Pueblo water rights.  Those rules have not yet been adopted.  The objection that the Settlement Agreement effectively changes priority dates is speculative and premature.  *See New Mexico v. Lewis*, 150 P.3d 375, 388 (N.M. Ct. App. 2006) ("although priority calls have been and continue to be on the table to protect senior users' rights, such a fixed and strict administration is not designated in the Constitution or laws of New Mexico as the sole or exclusive means to resolve water shortages where senior users can be protected by other means").

**Pueblo Water Leasing**

Some claimants object to the provision in the Settlement Agreement that allows the Pueblos to lease their water rights stating: "A 99 year lease violates the 10-year limitation on leases of water rights and the very long term lease violates State Law against perpetuities."

The State statute governing water use leasing was recently amended, effective May 21, 2014, and states:

> A water use due under an adjudicated water right secured to a pueblo pursuant to the settlement agreements approved in Title 5 and Title 6 of the federal Claims Resolution Act of 2010, P.L. No. 111-291, Sections 501-626, or in the partial final judgments and decrees entered pursuant to those settlement agreements, may be leased for a term, including all renewals, not to exceed the term specifically authorized in that act; provided that this subsection shall not apply to any water

use due under any state-law based water rights acquired by a pueblo or by the United States on behalf of a pueblo.

N.M. Stat. Ann. § 72-6-3(D).  Thus a lease term of up to 99 years is allowed under state law.

Other claimants object stating:

The Pueblos can lease their water right to others for up to 99 years.  Although the proposed Settlement Agreement states that the leased water must be used in the Basin, there is no protection against a sub-lessee removing the water from the Basin, thus the lease provision as written adds to the likelihood of a first priority call by the Pueblos if water is removed from the Basin.

Section 7.3 of Settlement Agreement expressly prohibits export of Pojoaque Basin Water stating "No surface or ground water physically diverted within the Pojoaque Basin may be delivered for use outside of the Pojoaque Basin."  Doc. 7970-1 at 46.  Consequently, a sub-lessee may not use water outside of the Basin.

**Treaty of Guadalupe Hidalgo**

Some Objectors suggest that the Settlement Agreement will violate the Treaty of Guadalupe Hidalgo.  "In the Treaty of Guadalupe Hidalgo, the United States agreed to protect rights recognized by prior sovereigns."  *New Mexico v. Aamodt*, 537 F.2d 1102, 1108-1109 (10th Cir. 1976).  Those Objectors make statements such as "the settlement forgoes the Treaty of Guadalupe Hidalgo Rights and doesn't consider protections of those rights," the settlement "overrid[es] the equal priority status of all stakeholders established and honored by the Treaty of Guadalupe Hidalgo,"  and "the settlement challenges the Treaty of Guadalupe Hidalgo 1848, stating no 'superior access' water rights by anyone, tribe, other entities before 1848."  They do not, however, state the specific legal and factual basis of their objection or how they will be injured or harmed by the Settlement Agreement.

**Anti-Injunction Act Violation**

Some Objectors argue that the Court's January 13, 1983, Order enjoining the State

Engineer from issuing permits which allow use of domestic well water for outdoor irrigation violates the Anti-Injunction Act, 28 U.S.C. § 2283, because the Court failed to convene a three judge court per 28 U.S.C. § 2284, and that the Settlement Agreement is therefore void.  *See* Atencio Response at 4-5.  The Court has already concluded that this argument is without merit stating:

> The Trujillos' arguments are without merit because neither of the statutes on which they rely are applicable to this case.  The statute governing the stay of State court proceedings, 28 U.S.C. § 2283, states:
>
>> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
>
> The preliminary injunction enjoins the State Engineer from issuing domestic well permits which allow use of domestic well water for outdoor irrigation.  The preliminary injunction does not "stay proceedings in a State court."  The statute concerning three judge district courts, 28 U.S.C. § 2284(a), states in part:
>
>> A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body.
>
> The Trujillos have not cited any Act of Congress which requires a district court of three judges for this water rights adjudication or to issue the preliminary injunction.  This water rights adjudication does not challenge the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body.

Mem. Op. and Order at 2, Doc. 10204, filed May 29, 2015 (Johnson, J.).

**Property Exempt from Settlement**

One Objector states: "Property deed signed by Herbert Hoover, President of U.S. specifically segregates this well property from all future Indian Pueblo claims or federal claims." Doc. 8096 at 2.  The Objector did not provide a copy of the deed, did not explain how the deed exempts his water right from adjudication by the Court or administration by the State, and does

not state how implementation of the Settlement Agreement will harm his water right other than stating "Loss of well water."

**Conclusion**

The Court finds that the objections regarding the Settlement Agreement approval procedure are not well taken.  It is well established that settlement negotiations may be confidential and need not involve every party, that the Attorney General for the State of New Mexico has the power to settle this suit, and that the Order to Show Cause was properly served. The Court also finds that the Objectors had sufficient time and information to assess the Settlement Agreement.

The Court finds that objections relating to the implementation of the Settlement Agreement are unfounded, for example the allegation that the State Engineer has a conflict of interest, are based on a mis-reading of the Settlement Agreement, such as those claiming that they will have to transfer their water rights to the CWU upon entry of the Partial Final Decree, or arise from the failure to recognize that the Settlement Agreement will not affect the water right amounts adjudicated for those claimants who choose to not join the Settlement.  Objections that implementation of the Settlement Agreement will violate state and/or federal laws are based on incorrect interpretations of those laws.  Finally, many of the Objections do not state the specific legal and factual basis for their objections, or state how the claimant's water rights will be injured or harmed in a legally cognizable way by the Settlement Agreement and entry of the proposed decree and interim order.

The Court concludes that the Objectors have not met their burden of demonstrating that the adoption and implementation of the Settlement Agreement is not fair, adequate, or reasonable, is not in the public interest, or is not consistent with applicable law.  The Court,

therefore, overrules the Objections.

The Court further concludes that the Settlement Agreement is fair, reasonable and adequate. The Settlement Agreement was fairly and honestly negotiated over a period of six years and, with amendments, approved by Congress. *See New Mexico v. Aamodt*, 583 F.Supp.2d 1313, 1319-1320 (D.N.M. 2007) (finding that the settlement negotiations were conducted by unrelated parties, each acting under their own self-interest, under the supervision of a neutral mediator) (Vázquez, J.). The quantification of the Pueblos' water rights raises serious questions of law and fact which places the ultimate outcome of the litigation in doubt. *See New Mexico v. Aamodt*, 537 F.2d 1102, 1113 (10th Cir. 1976) ("The quantification of the Pueblos' rights presents another problem and in the first instance, it must be decided by the district court. Exploration of the pertinent law of Spain and Mexico may be required. We do not know."). The fact that quantification of the Pueblos' rights was not resolved through litigation in the 24 years between the Tenth Circuit's statement in 1976 that it must be decided in the first instance by the District Court and the beginning of settlement negotiations in 2000, and the fact that the Settlement Parties were able to agree on settlement of the Pueblos' rights in six years, and worked together for seven more years to obtain Congressional authorization of the Settlement Agreement and to revise the Settlement Agreement to conform to the Settlement Act, leads the Court to two additional conclusions. First, the Court concludes that the value of resolving the Pueblos' water rights now by approving the Settlement Agreement outweighs the possibility of an alternative resolution after protracted and expensive litigation. Second, the Court concludes that the Settlement Parties have determined that the Settlement is fair and reasonable.

**IT IS ORDERED** that:

(i) the Objections to the Settlement Agreement, Proposed Partial Final Judgment and

Decree on the Water Rights of the Pueblos of Tesuque, Pojoaque, Nambé and San Ildefonso, and Interim Administrative Order are **OVERRULED;**

(ii) the Settlement Agreement, Doc. 7970-1, is **APPROVED;**

(iii) the proposed Partial Final Judgment and Decree of the Water Rights of the Pueblos of Nambé, Pojoaque, San Ildefonso, and Tesuque, Doc. 7970-3, be **ENTERED;** and

(iv) the proposed Interim Administrative Order, Doc. 7970-2, be **ENTERED**.

_____
**WILLIAM P. JOHNSON**
**UNITED STATES DISTRICT JUDGE**